No. 36,178

THE AMERICAN NATIONAL BANK OF HUTCHINSON, *Appellant,* v. THE CENTRAL CONSTRUCTION COMPANY et al., (including Guy A. THOMPSON, Trustee for Missouri Pacific Railroad Company, Debtor, and MASSACHUSETTS BONDING AND INSURANCE COMPANY) *Appellants,* L. G. BARCUS, doing business as L. G. BARCUS & SON, THE VICTOR L. PHILLIPS COMPANY, W. L. SCHLENKER, doing business as WELBORN LUMBER COMPANY, ELECTRICAL & MAGNETO SERVICE COMPANY, INC., L. B. FOSTER COMPANY, INC., A. J. BANNOWSKY, doing business as SMITH & HOFFMAN TRANSFER COMPANY, and FUNKHOUSER EQUIPMENT COMPANY, *Appellees.*

(163 P. 2d 369)

Opinion filed November 10, 1945.

*Roy C. Davis,* of Hutchinson, argued the cause, and *Warren H. White, Frank S. Hodge, Eugene A. White* and *Wm. H. Vernon, Jr.,* all of Hutchinson, were on the briefs for appellant American National Bank of Hutchinson.

*O. P. May,* of Atchison, *Joseph G. Carey, W. F. Lilleston, George C. Spradling, Henry V. Gott* and *Ralph M. Hope,* all of Wichita, were on the briefs for appellant Guy A. Thompson, trustee for Missouri Pacific Railroad Company.

*D. A. Murphy,* of Kansas City, Mo., argued the cause, and *R. L. Hecker,* of Kansas City, *J. T. Harding, R. Carter Tucker* and *John Murphy,* all of Kansas City, Mo., were on the briefs for appellant Massachusetts Bonding and Insurance Company.

*T. F. Railsback,* of Kansas City, argued the cause for all of the appellees, and *Roy Vickery,* of Kansas City, Mo., was on the briefs for appellees Victor L. Phillips Company and Funkhouser Equipment Company.

*T. M. Van Cleave,* of Kansas City, was on the briefs for appellee L. G. Barcus.

*James D. Howell,* of Kansas City, was on the briefs for appellee Electrical and Magneto Service Company, Inc.

*Leonard O. Thomas* and *Lee E. Weeks,* both of Kansas City, were on the briefs for appellees L. B. Foster Company, Inc., and Welborn Lumber Company.

The opinion of the court was delivered by

THIELE, J.: This was an action to determine the rights of plaintiff and of several of the defendants to a sum of money due under a contract for the construction of a railroad bridge in Wyandotte county.

For brevity in reference, the plaintiff will be referred to as the bank; the defendant The Central Construction Company as the contractor; the defendant Guy A. Thompson, Trustee for Missouri Pacific Railroad Company, as the carrier; the defendant Massachusetts Bonding and Insurance Company as the bonding company;

and the names of other defendants will be set out later and then referred to by easily identifiable names.

In a preliminary way, it may be said that the carrier had entered into a contract with the contractor for the erection of a bridge, under which a portion of the moneys due the contractor was to be retained by the carrier until completion of the work. To finance its operations the contractor borrowed from the bank the sum of $3,000 and to secure payment thereof assigned to the bank its right in the retained moneys. Under the terms of the contract the contractor gave a bond, signed by the bonding company, the terms of which are more fully set out later, and in connection therewith the contractor executed to the bonding company an assignment of the retained moneys. In the performance of the contract the remaining defendants furnished materials and equipment under conditions more fully set forth later herein. When the bridge was completed the carrier had in its possession and unpaid to the contractor or some of the parties claiming to be entitled thereto, a sum now agreed to be $3,701.65. The bank brought an action against the contractor in the district court of Barton county, Kansas, and recovered a judgment of $3,000. None of the other parties herein were parties to that action. The bank then commenced the present action in the district court of Wyandotte county in order that the rights of the several parties in and to the above sum of $3,701.65, and the rights and liabilities of the bonding company, might be determined.

It is not necessary that we review in detail the petition of plaintiff, the answers, or answers and cross petitions of the several defendants, and the replies thereto. After the issues were joined, certain defendants moved the trial court to determine issues of law in advance of the trial. In a summary way, it may be said the trial court concluded that the carrier, having failed to take a statutory bond under G. S. 1935, 66-215, was directly liable to defendants, the Welborn Lumber Company, Funkhouser Equipment Company, The Victor L. Phillips Company, Barcus & Son, Electrical and Magneto Service Company, Inc., and L. B. Foster Company, Inc., on their claims totaling $3,690.70, and to other creditors, not made defendants, in the further sum of $384. The bank's motion for a new trial and for revision of the judgment, and the motions for a new trial of the bonding company and the carrier, were denied and each of them perfected appeals to this court. Thereafter in the

trial court a stipulation of facts by all parties was filed and the cause was submitted to the court, which, in accordance with the findings and conclusions of law previously made, rendered judgments in favor of the claimant defendants for the several amounts claimed against the contractor, the bonding company and the carrier; that the carrier pay into the court the $3,701.65 retained by it for application pro rata on the claims, and when it pays balances due, it have judgment over against the bonding company. The bank, the bonding company and the carrier each filed motions for a new trial, and these several motions being denied, they perfected an appeal to this court, the notice of appeal stating it was supplementary to and in enlargement of the first appeal. The specifications of error cover the matters hereafter discussed. No point is made of it, but as will hereafter appear some of the individual claims involve less than $100. In view of the final judgment, however, appellants are entitled to appeal as to these claims. See *Shannon v. Abrams*, 98 Kan. 26, 157 Pac. 449, Ann. Cas. 1918E 502.

Among other agreements the stipulation of facts shows the following: There is no controversy between the bank and the bonding company as to the priority of their respective assignments from the contractor of moneys retained by the carrier. The contractor is indebted to Barcus & Son in the sum of $150 for rental of two concrete mixers loaned by Barcus to the contractor, used in the work and then returned to Barcus. The contractor is indebted to Victor L. Phillips Company in the total sum of $860, made up of $358 purchase price of a pump used in the work and after completion removed by the contractor as part of its equipment, of $102.44 rental on equipment used and returned to Phillips, and of $399.56 being equipment and repairs to equipment. The contractor is indebted to Welborn Lumber Company in the sum of $21.84 for material used or consumed. Welborn asserts no claim to or interest in retained funds and asserts no claim against the carrier nor against the bonding company, and is entitled to judgment only against the construction company. (This item is mentioned for the reason it is included in the entire judgment.) At the trial, Welborn sought permission to amend its pleading to ask judgment against the bonding company. The amendment was permitted, the court stating if the stipulation provided Welborn got no benefits it would get none. We think under the stipulation Welborn was not entitled to any judgment except against the contractor. The contractor is indebted to the

Magneto Company in the sum of $28.88, being the net purchase price of a magneto installed on a crane used in the work and remaining a part of the crane after completion of the work. The contractor rented steel piling from the Foster Company. The rental due is $68.16. After the work was completed piling was pulled and left near the bridge. Foster paid $150 for hauling and charged $15 for inspection trips. Some piling disappeared, the value being $248.44. The claim as allowed covered these several items. The contractor is also indebted to Foster in the sum of $73.25, for reconditioning piling. The contractor is indebted to Smith and Hoffman Company in the sum of $50.78 for hauling the Funkhouser equipment to and from the work. The contractor is indebted to Funkhouser in the sum of $1,815.73, being the balance due for rental on equipment, for hauling it, and for repairs and repair parts to it. (It may here be noted that the trial court gave judgment for the several amounts as against the contractor, the bonding company and the carrier.) Also included in the stipulation is the contract between the carrier and the contractor, and the bond given by the bonding company.

It may first be noted that the carrier did not take from the contractor and file with the register of deeds a bond conditioned that the contractor "shall pay all laborers, mechanics and materialmen, and persons who supply such contractor with provisions or goods of any kind, all just debts due to such persons . . . incurred in carrying on such work" as provided by G. S. 1935, 66-215, and under that statute it is liable to the persons mentioned for all debts covered thereby to the full extent thereof. Among its conclusions of law, the trial court concluded that the term "provisions or goods" as used in the above statute was broad enough to cover anything in the way of goods, wares and merchandise supplied to a contractor, and so construed would include rental of machinery and construction equipment furnished and used in performance of the contract. The appellants contend the conclusion, as applied to the facts, is erroneous and that the claims of the several appellees, covering various rental, hauling and purchase contracts, are not claims within the coverage of the above mentioned statute, and they direct our attention to many authorities. Although appellees make a general statement that they claim the railroad company, having failed to take a statutory bond, is directly and personally liable to them, they do not pursue the contention nor cite any authorities, but in-

stead contend that the bond which was given protects them. In our opinion the trial court's conclusion of law cannot be sustained. With respect to rental of machinery the following must suffice. In *Wilkinson v. Pacific Mid-West Oil Co.*, 152 Kan. 712, 107 P. 2d 726, plaintiff sought a mechanic's lien upon an oil and gas leasehold. Under the statute there applicable (G. S. 1935, 55-207) the right to a mechanic's lien is as broad, if not broader, than under the statute now under consideration. It was there said:

"It is well settled that the rental or the value of the use of machinery cannot be the basis for the claim of a mechanic's lien." (l. c. 714.)

See the cases in that opinion cited in support of the above statement. See, also, 36 Am. Jur. 57 (Mechanic's Liens, § 70). With respect to claim of lien for hauling, it is to be observed that the amounts claimed were not an element of the price of any work, labor or material furnished (*Road Supply & Metal Co. v. Casualty & Surety Co.*, 121 Kan. 299, 246 Pac. 503; *Southwestern Electrical Co. v. Hughes*, 139 Kan. 89, 93, 30 P. 2d 114), but on the contrary were separable and distinguishable items of expense; and under the reasoning of *Traction Co. v. Brick Co.*, 112 Kan. 774, 213 Pac. 169, the items of hauling did not form the basis of a mechanic's lien. In addition to the items of rental and hauling are certain items of repair, inspection and the piling which disappeared. None of these items are within the purview of the statute as being either labor or material or provisions or goods supplied. The claimants, appellees here, may not have judgment against the carrier on the theory of its liability under G. S. 1935, 66-215. If they are to recover against any other than the contractor, it is by reason of the construction contract and the bond given in connection with that contract.

Although each is set out in more detail later, the construction contract provided for a bond by the contractor. The bond made specific reference to the contract which was attached to and made part of the bond. Therefore, to determine the intent of the bond with respect to protection of the claimant appellees and the liability of the bonding company, it becomes necessary to construe them, in all their parts, together. See *Haynes Hardware Co. v. Western Casualty & Surety Co.*, 156 Kan. 356, 113 P. 2d 574.

As printed in the abstract, the construction contract consumes fifteen pages and contains twenty-eight numbered paragraphs. It includes many provisions not of present interest. The portions re-

lied on by either party, or necessary for our consideration are summarized or quoted, as follows:

In paragraph 1 is a definition of terms, and we note two of them:

"(c) 'Work' means the whole of the particular thing or things, including any and all necessary materials and labor and other and different things appurtenant thereto, which are to be done, furnished, and/or performed; Work in general terms consisting of constructing [the bridge]."

"(e) 'Bond' means a written bond of indemnity, in the penal sum of $14,-400.00 and having as surety thereon a corporate surety acceptable to Carrier, conditioned for performing of Contractor's undertakings herein: which bond Contractor on own responsibility shall execute for benefit of Carrier, Carrier's successors and assigns, and deliver thereto as part hereof and thereafter keep effective. . . ."

Under paragraph 2 it is provided:

"Contractor shall at the Site provide all materials, superintendence, labor, equipment and other and different instrumentalities and things required for and in connection with the Work, and execute, construct and finish the Work, complete, in a lawful, expeditious, substantial and workmanlike manner . . . subject to the general conditions, requirements . . . elsewhere herein set forth. . . ."

And that carrier shall pay contractor at unit prices for particular items of work and material. (It is here observed that there is no stated overall consideration for performance.) Under three lettered subdivisions are provisions as to certain things to be furnished or done by the carrier without cost to the contractor. Under paragraph 4 it is provided contractor shall execute work as the engineer may direct and upon termination remove from carrier's premises all of contractor's work equipment, instrumentalities and other and different things, then thereon consequent on contractor's operations and leave the premises in acceptable condition. Paragraph 10 provides for extra work, and as compensation—

"Contractor shall charge and Carrier shall pay actual cost at Site, to Contractor, of all materials so used, plus ten per centum thereof, cost of all labor so performed, plus ten per centum thereof, rental for use of any equipment at rates to be agreed upon . . ."

Paragraph 12 provides for making monthly estimates of work done, and for retention of ten per cent for disposition as elsewhere provided. Paragraph 14 recites:

"Whenever Engineer, to facilitate completion of Work or to protect Carrier from loss, deems it necessary, Carrier, on Contractor's behalf, may, out of moneys soever then or thereafter to become due and payable to Contractor, pay to one or more persons then or theretofore employed on Work wages

from whomsoever except Carrier then due them because thereof, taking written receipts therefor. Whenever there appears to Engineer indication or evidence of liens, claims or charges soever for which Work or Carrier may be or become liable, Carrier, on Contractor's behalf, may deduct and retain, from said moneys, amounts sufficient fully to indemnify Carrier there-against and may then or thereafter pay and discharge any or all such valid liens and claims. Carrier may deduct and forever retain from said moneys amounts equal to any and all such payments."

Paragraph 15 provides for acceptance of the work by carrier,

". . . whereupon net balance of all moneys, including aforesaid retained percentages, then found due contractor shall be paid thereto at office of Carrier's Treasurer within sixty days following Contractor submitting to Carrier written evidence, satisfactory to Engineer, of there having been fully and duly satisfied and discharged all indebtedness, including labor and material bills, and all other and different liability, which, incurred consequent on this contract or attendant on the performance thereof by Contractor, may be or become a lien, charge or claim on or against the Work or the Carrier."

In paragraph 16 it is stated that—

"Contractor, by accepting any payment, thereby warrants there neither is nor ever can be any lien, claim or charge on or against Work or Carrier either for labor or materials furnished and incorporated by Contractor in that portion of Work covered by such payment. . . ."

Under paragraph 21, under certain specified failure of the contractor, the carrier—

". . . may use any or all of Contractor's aforesaid materials, labor, equipment and other and different instrumentalities and things in so doing said thing or things. Contractor at close of each calendar month shall repay total cost to Carrier thereof during such month. Carrier as one of Carrier's remedies is authorized to deduct from time to time, and forever to retain, from moneys soever now or as same become due and payable by Carrier to Contractor, such amounts as Carrier may choose until aggregate thereof shall equal the sum total of Contractor's liability."

Paragraph 22 states as follows:

"Contractor hereby agrees to defend, indemnify and hold harmless the Carrier from any mechanic's and/or materialman's lien, and from all liability, loss, damage, cost and expenses growing out of, or arising from, damage or injury to property, or death, damage or injury to persons which shall be caused wholly or in part by the negligence of agents or employes of Contractor, or by the negligence of sub-contractors, or by the negligence of agents or employes of sub-contractors, or by the neglect or failure of Contractor or of sub-contractors, or of agents or employes of Contractor, or of agents or employes of sub-contractors, to observe or to perform any of the promises, requirements or terms of this contract, and if suit shall be brought against Carrier to recover for any liability, death, loss, damage, injury, cost or ex-

pense described in C of paragraph 2, [No. C of ¶ 2 incorporated in the contract] or in this paragraph, Contractor agrees to defend such suit without cost to Carrier, and to pay any judgment that may be recovered therein, and to save Carrier free and harmless from any loss, costs, attorney's fees, damages or expenses on account thereof."

In paragraph 26 it is provided that neither the contract, nor any part thereof nor right of the contractor thereunder shall be transferred or assigned except by virtue of express agreement acceptable to the carrier.

The bond given to comply with the above contract contained a paragraph identifying the parties to it, stated a penal sum of $14,400, and continued:

"The condition of the above obligation is such, that

"Whereas, Contractor has contracted with Carrier among certain things to furnish and pay for certain materials and/or work equipment and to perform and pay for certain labor required for and in the undertaking, carrying on and completion by Contractor of certain work, including constructing [a bridge in Wyandotte County] for the considerations and as more particularly specified in one certain written agreement, dated October 22, 1940, . . . .

"Now, Therefore, if Contractor fully and faithfully perform all and singular the Contractor's undertakings in said agreement, or defend, indemnify and save harmless forever the Carrier from and against any and all pecuniary loss resulting from any failure by Contractor so to perform said undertaking or undertakings, then this obligation shall be void; otherwise to be and continue in full force and effect. And, Surety . . . waives the benefit of any defense not available to the Contractor."

When ruling on the motion for determination of questions of law in advance of the trial, the trial court filed a written opinion in which it reviewed the construction contract and bond, and following that review it concluded as a matter of law, as has been pointed out previously, that the carrier, having failed to take a bond as required by G. S. 1935, 66-215, was directly indebted to the claimants. That phase of the matter has been sufficiently discussed.

In a summary way, it may be stated the trial court also concluded that no statutory bond having been given, the bond which was given, when construed in connection with the contract, was intended for the benefit of strangers to the bond who might furnish labor or material or other and different instrumentalities and things required by the contract; that liability of the bonding company was not measured by the lien statute above mentioned but by the terms of the bond given and the contract; that under the bond the contractor should pay for materials, work equipment and labor required and

consequently by its own terms included payment for work equipment; and that rental or purchase of the items charged for in the different claims were covered by the bond and were items for which the principal and surety were liable. The trial court also concluded that the contractor having ordered and agreed to pay for those items and having failed to do so, and having failed to plead or contest those claims, had no defense to them; that under the bond the carrier and the bonding company had expressly waived the benefit of any defense not available to the contractor and such being the case, the bonding company is liable on the bond to the same extent as the carrier, and may not set up any defense not available to the contractor. Other conclusions include quotation of language from the contract and that the claims asserted are covered by them, and finally that all of the claimants have claims against the funds in the hands of the carrier, superior to the assignments to the bank and the bonding company.

Although stated in a different manner, in their briefs appellants contend generally that although the carrier failed to take a statutory bond as specified in G. S. 1935, 66-215, it has no liability under that statute for the particular items asserted by the claimant appellees, a contention already discussed, and further that the bond presently involved was not given for the benefit of third parties but only to indemnify the carrier, and that the bond and construction contract construed together do not cover the particular debts or claims asserted by the appellee claimants. In support of their contentions appellants direct our attention to many cases which will be noticed later. Before taking up the above contentions, however, we take note of appellees' brief in support of the judgment.

Appellees recognize that ordinarily a bond inures to the benefit of the named obligees and no other persons and that it may be relied upon by the obligees and not by persons strangers to the bond or its consideration, but they contend that the modern rule permits strangers to the bond to maintain an action in their own names upon the bond where it clearly was the intention of the contracting parties that the contract and bond were made for their benefit, and that this court has gone a long way in the adoption and application of this rule. In support of that contention our attention is directed to *Manufacturing Co. v. Deposit Co.*, 100 Kan. 28, 163 Pac. 1076, and *Haynes Hardware Co. v. Western Casualty & Surety Co.*, 156 Kan. 356, 133 P. 2d 574. More detailed references will be made

to these cases later herein. Appellees then direct attention to the definition of the bond used in the contract and especially to paragraphs 2, 10, 14, 15, 16, 21, 22 and 26 of the contract, all of which have been quoted or summarized heretofore, as emphasizing their contention the broad coverage of the contract expands its meaning from a contract not only to furnish labor and material, but other and different things appurtenant, including equipment and other and different instrumentalities and things required for and in connection with the work. They then denominate the bond a common law faithful performance bond, and call attention to the opening sentence of the "whereas" clause that the contractor has contracted "to furnish and pay for certain materials and/or work equipment" and to the last sentence dealing with waiver of defenses. After taking the position it is immaterial whether the rental claims are the basis of mechanics' lien claims, appellees argue that the liability of the bonding company is not measured by the lien statutes, but by the terms of the bond and contract, and that the obligation assumed by the bonding company goes far beyond the obligation imposed under the lien statute, and that the bonding company is liable to the claimant appellees under the bond and contract. In support, appellees rely principally on *Shannon v. Abrams,* supra. We pause to observe that it is not contended that under the construction contract the carrier agreed to pay anything to anyone except the contractor. If the items of the claims were not the basis of liens under the statute, then the carrier is without liability to the claimants except as to the retained moneys. The mere fact it was obligee under the bond did not subject it to liability.

Limits of space prevent setting forth an exhaustive review of the various cases relied on by any of the parties.

In *Manufacturing Co. v. Deposit Co.,* supra, sometimes referred to as the Algonite case, it appears a faithful performance bond was given by the contractor. The Algonite company, which furnished material used in the building, filed no lien. It brought an action against the bonding company. In that opinion may be found quotations from the construction contract showing clearly that all claims which might be the basis of liens were to be paid, and that the contractor was to furnish evidence that persons who performed labor or furnished materials had been paid, and that the owner could retain moneys due the contractor until all liabilities were discharged. In that case it was held:

"A surety bond to guarantee the faithful performance of a contract for the erection of a building, which by reference makes the contract and specifications a part of the bond, the specifications requiring the contractor upon final settlement to furnish satisfactory evidence that all persons who performed labor or furnished materials under the contract have been fully paid, otherwise reserving to the owner the right to retain final payment 'until all liabilities are fully discharged by paying them from such money,' is held to have been intended for the benefit of laborers and materialmen under the contract; and therefore they may maintain a suit on the bond to enforce their claims without having filed mechanic's liens." (Syl.)

In *Haynes Hardware Co. v. Western Casualty & Surety Co.,* supra, may be found an exhaustive review of our decisions dealing with construction contracts and bonds given in connection therewith. In that case plaintiffs sued in its own behalf and as assignee of various lien claimants. The contract required contractor to provide and pay for labor, material and other specified things, and the bond contained a provision for retention by the obligee of moneys due the principal until claims were paid. The bonding company urged that the bond was not intended to cover and did not provide for the payment of liens. This court, upon examination of the contract papers and bond, which were construed together to determine intent, held that the bond was for the benefit of the claimants; that they could maintain the action; and that the judgment rendered in their favor should be sustained.

It will be observed in examining both of the cases last mentioned the claimants were those whose claims were the basis of mechanics' liens. Both cases are authority for holding that where the laborers or materialmen are sufficiently designated as a class for whose benefit the condition requiring payment of their claims was inserted in the contract, they may maintain an action on the bond. The cases are not authority that creditors not holders of lienable claims or not covered by the contract and bond may maintain such an action.

Appellees say that the decision in *Shannon v. Abrams,* supra, fits their case exactly, and they quote the fourth and fifth paragraphs of the syllabus and portions of the opinion, which read as follows:

"Where contractors agree to build a road and to pay 'for all labor and material and all other obligations or liabilities incurred in the doing of the said work or performance of any of the things necessary hereunder,' and a surety company, for a valuable consideration, guarantees the performance of the contract, and where the contractors fail to pay the necessary and pertinent bills incurred by them in such undertaking, the surety company is liable thereon.

"In a road-building contract, which named the quarry where the materials for the road were to be obtained, the contractors failed to pay the necessary and pertinent accounts for dynamite, for coal consumed in the engine which operated the rock crusher, for lumber, for the rent of the quarry and for the rent of tools. *Held,* that the surety company was liable for the payment of these accounts under its surety obligation." (Syl. ¶¶ 4, 5.)

In that case plaintiff sued for himself and as assignee of thirteen claims growing out of a contract for construction of a macadam road. As to five items concerning team and road work, it was stated the liability was too plain for discussion. The other items all seem to have grown out of the operation of a rock quarry and included dynamite, coal used in an engine on a rock crusher, rent of the quarry and an item for rent of tools used in an amount of $64. The surety company contended the several items were not within the terms of the surety obligation. In answering that contention it was said:

"A majority of this court [three justices dissented] holds otherwise; that under the rule announced in *Lumber Co. v. Douglas,* 89 Kan. 308, 131 Pac. 563, and the cases there cited, and the fair interpretation of the contract, all these bills were pertinent to the building of the road, and that it could make no difference to the surety company whether the contractors purchased all the supplies for building the road from somebody else who had purchased dynamite and coal and rented tools, and rented a rock quarry, and based his price for the materials thus furnished to the contractors in consideration of such expenditures, or whether the contractors procured these materials through the incurrence of these expenditures themselves. . . . If it (surety company) does not pay these bills it will pay nothing, for the materials were procured by the incurrence of the bills here presented." (l. c. 31, 32.)

It was further stated the contract specified the quarry where the rock should come from, and that the contractor should pay for the transportation of materials. It would appear that except possibly for rent of tools, all of the operations on which the claims were based were for production of materials consumed in the work and that the item of transportation was a direct contract obligation.

Appellants, in support of their contentions, cite other cases, but seem to rely mostly on *Traction Co. v. Brick Co.,* supra. In that case the plaintiff brought an action to recover on a statutory bond furnished by the contractor, for freight charges on brick used in paving a street in Independence. In disposing of a contention that the company was liable, this court said:

"It is suggested that the surety company's liability can be gleaned from the general language of the bond guaranteeing faithful performance of the con-

tractor's agreement with the city in all its parts. But it is difficult to discern anything approaching a breach of the contractor's agreement with the city of which the traction company may take advantage. In *Shannon v. Abrams,* 98 Kan. 26, 157 Pac. 447, the surety company bound itself not only to pay claims which might be the basis of statutory liens but 'all other obligations and liabilities necessarily incurred' in constructing the improvement. No such all-inclusive obligation is found in the present contract, nor can its terms be fairly so extended. The pertinent recital in the bond provides that if the contractors 'shall well and truly pay all claims for labor or material, or both labor and material, which might be the basis of liens . . . and shall hold said city free and harmless of and from all such claims, then this bond is to and shall become null and void; otherwise to be and remain in full force, effect and virture.'" (l. c. 775.)'

Under the decisions above noted, we examine the bond and contract to determine whether, by reason of the terms of the bond and contract construed together, there is any liability of the bonding company to pay the claims asserted by the appellees. Liability of the bonding company arises out of its execution of the bond. In the bond and under the whereas clause is the statement that the contractor has agreed with the carrier "to furnish and pay for certain materials and/or work equipment . . . required for and in the undertaking, carrying on and completion . . . of certain work . . . as more particularly specified in one certain written agreement, . . ." The contractural clause of the bond has been quoted and will not be repeated. Whether, by that bond, the bonding company contracted that if the contractor did not pay appellees' claims, it would do so is to be determined from an examination of the contract.

The definition of "work" given in the contract need not be repeated.

Although the contract defines the bond as being one of indemnity to be executed for the benefit of the carrier and its successors and assigns, we do not believe that portion may be separated from remaining portions of the contract, and construed to exclude claimants under the contract and to be solely for the benefit of the carrier, its successors and assigns. All of the contract provisions must be construed together to determine whether claimants are protected. See *Haynes Hardware Co. 'v. Western Casualty & Surety Co.,* supra, 361 and corresponding part of the syllabus.

The elements of the second paragraph have been quoted and summarized heretofore. It is not specifically stated that the contractor shall pay for certain items although that may be inferred. The

contract does provide what the carrier shall furnish without cost to the contractor. Possibly an inference may be drawn therefrom that the latter is all that the carrier is liable for. With reference to the contractor's duties, the paragraph does provide that those duties are subject to the general conditions and requirements of the contract.

While appellees direct attention to paragraph 10, which provides for extra work on a cost basis including rental for use of equipment, that rental is one to be paid by the carrier to the contractor. There is nothing in the agreed statement that any extra work was done and we need not notice this paragraph further than to say that we do not construe it as warranting or compelling any recovery for the appellees.

Paragraph 12 provides for retention by the carrier of ten percent of amounts due the contractor, and for disposition thereof as provided in the contract.

Passing for the moment some intervening paragraphs, we think that paragraph 21, which provides that in event of certain failure of the contractor to perform, the carrier may use the contractor's materials, labor, equipment and other things specified, cannot be construed into creating liability of the carrier to the present claimants, or if it could be, there is no evidence of any such use. Neither do we believe that paragraph 26 providing about transfers or assignments has any bearing.

In paragraph 14 provision is made that the carrier may pay wages due, and the further provision authorizing the carrier, out of moneys due the contractor, to pay liens, claims and charges for which the work or carrier may be liable. Note that the provision does not say for which the contractor may be liable. Paragraph 15 refers to a time when the work as a whole has been completed, when the net balance due the contractor shall be paid upon the carrier's being satisfied that there has been discharged all indebtedness "including labor and material bills, and all other and different liability, which, incurred consequent on this contract or attendant on the performance thereof by Contractor, *may be or become a lien, charge or claim on or against the Work or the Carrier.*" (Emphasis supplied.) Note again that the claims are those for which the work or carrier are liable, and not those for which the contractor is liable—it is not mentioned. Paragraph 16 has been quoted above. It covers a warranty by the contractor but contains nothing expanding other paragraphs herein detailed. Finally we come to paragraph 22 hereto-

fore quoted, wherein the contractor agrees to hold the carrier harmless from all liability, loss, etc. Without repeating the provisions of this paragraph, we conclude that it does not enlarge the liabilities of the carrier under the contract, nor those of the bonding company, under the contract and bond.

The contract is long and verbose, but hardly open to any argument that the carrier agreed to pay anything to anyone except the contractor. Of course, the contract notwithstanding, it having taken no bond as provided by G. S. 1935, 66-215, it had liability for lienable items. Insofar as the contractor is concerned, it had a duty generally to pay all of its debts, whether connected with the contract or its performance or otherwise—but its duties generally and the obligations imposed upon it by the contract, performance of which was assured by the bonding company, were not the same. Under the contract, before it could receive its compensation, it had the duty of paying all creditors who might have liens under the statute. Although the language varies, the contractor, before receiving its compensation in full, had also to satisfy the carrier that it had discharged all claims and charges soever for which the work or the carrier were liable, including all other and different liability consequent on the contract or attendant on its performance *which may be or become a charge or claim on or against the work or the carrier.* It seems significant to us that inclusion of claims against the contractor is not mentioned. The evident intent was to protect the carrier and its property against claims for which it might be liable and as to that class of claims the bond covered. We have not overlooked the inclusion of the word "work" in the language that the claims be against the "work" or the "carrier." The word "work" as quoted above, does not pretend to do more than define the project to be performed and the means used to perform it, and although the word is used in subsequent parts of the contract, at no place is there any language susceptible of being construed as covering claims of creditors of whatever degree.

Final disposition of this phase of the case need not rest on any analysis of the contract, as distinguished from the facts giving rise to the contention that the claimants are protected by the bond. The classes of claims, rather than of creditors, show that some of the claimants seek to recover for the purchase price of equipment used on the project, but retained by the contractor when it moved off the work, others are for rental of equipment, others are for

drayage charges in moving equipment. None of the claims is for anything or the use of anything consumed in performance of the contract. The construction placed on the contract by the trial court, and contended for by the appellees, would compel a conclusion that the bonding company became surety for all of the contractor's debts incurred for the purchase of any machinery or equipment or for its use, or in any matter connected therewith, if it were used in performing the contract, a conclusion we think unwarranted. We conclude that the contract and bond, construed together, do not warrant any judgment in favor of appellees.

In treating the above matter we have not considered the last part of the bond wherein the surety waives the benefit of any defense not available to the contractor. Appellees contend that the liability of the bonding company is exactly the same as that of the contractor, and it directs attention to the fact that in its answer the carrier pleads the waiver. The gist of its other contentions is that though the contractor could have pleaded the claimants did not furnish the machinery or perform the other things claimed, or that it had paid therefor, it could raise no question the items were not lienable; that the contractor had obligated himself to pay claimants and could not otherwise defend, and the bonding company is in no better position.

In view of our conclusion heretofore reached, that based on the contract and bond the appellee claimants have no right of recovery, it is doubted that the question of waiver is of importance, for if they have no right of recovery in any event, the question of waiver becomes immaterial. It is noted, however, that it is of no consequence the carrier, the named obligee, in its answer, pleaded the waiver clause of the bond, nor that the contractor could raise no question about the items being the basis for liens. The carrier could and did raise the question, and it has been decided. Further, it having been determined that the claims of appellees are not within the purview of the contract, the appellees are not concerned with the bond.

The judgment of the trial court is reversed, and the cause remanded with instructions to render judgment consistent herewith.