CALVERT WESTERN EXPLORATION CO., a Corporation, *Appellee*, v. DIAMOND SHAMROCK, *et al.*, *Appellants*, v. SPEEDY OILFIELD SERVICE, *Intervenor-Appellee*.

No. 55,416

CALVERT WESTERN EXPLORATION CO., a Corporation, *Appellee*, v. OLEUM, INCORPORATED, *et al.*, *Appellants*.

(675 P.2d 871)

No. 55,415

Opinion filed January 13, 1984.

No. 55,416

Opinion filed January 13, 1984.

*Jerome E. Jones,* of Hershberger, Patterson, Jones & Roth, of Wichita, argued the cause and was on the brief for appellants.

*Gene H. Sharp*, of Neubauer, Sharp, McQueen, Dreiling & Morain, P.A., of Liberal, argued the cause and was on the brief for appellees.

The opinion of the court was delivered by

McFARLAND, J.: These are consolidated appeals from summary judgments foreclosing subcontractors' mechanics' liens on certain oil and gas leases in Meade and Clark counties, Kansas.

Calvert Western Exploration Co. is the plaintiff in both actions and seeks enforcement of subcontractors' liens arising from the performance of drilling services. Defendant Diamond Shamrock Oil and Gas Company is the owner of the Meade and Clark County leases on which foreclosure is sought. The other named defendants have no separate positions from that of Diamond Shamrock and their defense of the actions as well as the bringing of the appeal herein has been conducted by Diamond Shamrock. No purpose would be served in this opinion by listing such other defendants herein and stating their precise involvement in the action. We shall, henceforth, just refer to the one defendant, Diamond Shamrock. Intervenor Speedy Oilfield Service transported Calvert Western's drilling rig from the Clark County lease of Diamond Shamrock to the Meade County lease of Diamond Shamrock and its mechanic's lien is based upon the transportation services performed.

Having identified the parties, we turn now to the facts. On May 8, 1981, Calvert Western entered into what is known in the oil and gas industry as a "daywork contract" with Love Enterprises of Texas. Under the contract Calvert Western was to provide Love Enterprises with a drilling rig and crews for the drilling of "various" oil and gas wells in Baca County, Colorado; Seward County, Kansas; Cimarron County, Oklahoma; and "other wells in the panhandle area." Love agreed to pay $6,050.00 per day for the entire six-month period of the contract, whether or not the rig was in actual use. The rig was to be provided after it was no longer utilized in the drilling of an Amoco well in Colorado. The rig was released from the Amoco site on May 13, 1981, the effective date of the commencement of the six-month contract period.

On June 5, 1981, Love Enterprises entered into a daywork contract with Diamond Shamrock to drill a well on its oil and gas lease in Clark County, Kansas (Pfeifer No. 3). Love was to be paid $5,000.00 per day for the drilling job. The Calvert Western rig and crews were in Colorado drilling the Baca County well as

per Love's instructions, having completed the Amoco job. Love directed Calvert Western to move the rig to the Clark County site. On June 9, 1981, the rig and crews arrived in Clark County. Drilling commenced and the well was completed.

On June 26, 1981, Love and Diamond Shamrock entered into a second daywork contract for the drilling of a well in Meade County, Kansas (Reimer No. 2). The per day rate was $5,000.00 plus Diamond Shamrock was to pay the cost of moving the rig. Love hired Speedy Oilfield Service to move the rig which was accomplished on July 13, 14 and 15, 1981. The cost of the move was $6,995.21.

Before the move, Calvert Western billed Love for $116,490.00. Payment was due in early July. On July 6, 1981, Love issued a check for the full amount to Calvert Western. On July 10, 1981, Calvert Western was advised payment on the check had been stopped. On July 13, 1981, the owner of Love Enterprises (Thomas Etheredge) appeared in the home offices of Diamond Shamrock in Texas seeking immediate payment of $164,968.21 due under the June 5, 1981, Clark County daywork contract. Diamond Shamrock complied with Love's request. Later on the same day Calvert Western telephoned Diamond Shamrock's home office advising it owned the rig and would probably file a lien. Diamond Shamrock then directed no drilling occur in Meade County (the rigging-up had been completed).

On July 23, 1981, Calvert Western sued Love Enterprises in the District Court of Tarrant County, Texas. On August 25, 1981, the Texas court entered judgment against Love for $395,073.33 based upon $116,703.20 for Baca County work, $195,938.78 for Clark County, and $34,031.35 for Meade County. On September 25, 1981, Calvert Western executed a "Release of Judgment Lien" in favor of Love Enterprises. The release resulted from an agreement by Love Enterprises to pay Calvert Western $72,000.00 in cash and to issue a promissory note of $323,073.33, for the remainder. In a letter dated October 6, 1981, to Mr. Kelly, President of Calvert Western, Mr. Etheredge, of Love Enterprises, revealed it was his intention the $72,000.00 cash payment should apply first to the oldest dated invoice upon which the Texas judgment had been entered—*i.e.*, the Baca County debt of $116,703.20.

Meanwhile in August, 1981, Calvert Western filed suit in

Clark and Meade counties to foreclose its oil and gas liens on Diamond Shamrock's leases. Calvert Western contended it was entitled to foreclosure under K.S.A. 55-207 as it was an oil and gas subcontractor to the Diamond Shamrock-Love Enterprises contract. Speedy Oilfield Service intervened in the Meade County action seeking foreclosure, as a subcontractor of Diamond Shamrock, of its lien upon Diamond Shamrock's lease for having moved the rig from Clark to Meade County. The Clark and Meade County cases were consolidated below in an action in Clark County District Court.

Calvert Western and Speedy Oilfield Service filed for summary judgment and on December 6 and 10, 1982, the district court granted the motions. In so doing, the court found Calvert Western had been a subcontractor of Diamond Shamrock through Love Enterprises and/or Maranatha Oil and Exploration Corporation and, as such, had been entitled to relief and protection as afforded by K.S.A. 55-207 through -209. The court further declared the May 8, 1981, agreement between Calvert Western and Love Enterprises had been a drilling contract and not, as contended by Diamond Shamrock, a lease of personal property. Finally, the court ruled the September 25, 1981, Texas Release of Judgment Lien executed by Calvert Western to Love Enterprises had not been intended to extinguish or cancel the obligation created by the May 8, 1981, agreement. As to intervenor Speedy Oilfield Service, the district court held it had been a subcontractor of Diamond Shamrock with a valid lien on Diamond Shamrock's Meade County oil and gas lease. The court then granted foreclosure of all liens on Diamond Shamrock's Clark and Meade County leases. Diamond Shamrock appeals from the judgment.

The first issue before us is whether the district court erred in holding the May 8, 1981, daywork drilling contract between Calvert Western and Love Enterprises was a drilling contract rather than a lease of personal property.

In *Wilkinson v. Pacific Mid-West Oil Co.*, 152 Kan. 712, 714, 107 P.2d 726 (1940), we held the rental or value of use of machinery could not be the basis for a claim of a mechanic's lien. See also *American Nat'l Bank v. Central Construction Co.*, 160 Kan. 400, 405, 163 P.2d 369 (1945).

Was the May 8, 1981, agreement between Calvert Western and

Love Enterprises a lease of personal property (a drilling rig) so as to preclude an oil and gas lien by plaintiff upon defendant's oil and gas leases? Defendant contends the May 8, 1981, agreement was a lease and relies on Corpus Juris Secundum which defines a lease in the following manner:

"The word 'lease,' when used with reference to personal property, frequently signifies a bailment for hire for the mutual advantage of the parties, that is, a hiring of personal property for a stated period of time and for a monthly sum of money for its use, and a hiring of personalty for a fixed term is nevertheless a bailment although the hirer has an option to purchase the property before the expiration of the term." 8 C.J.S., Bailments § 8, p. 350.

Black's Law Dictionary (5th ed. 1979), p. 800, proclaims when used with reference to tangible personal property, the word "lease" means a contract by which one owning such property grants to another the right to possess, use and enjoy it for a specified period of time in exchange for periodic payment of a stipulated price, referred to as rent.

The difficulty with Diamond Shamrock's argument is that Love Enterprises received more than just a drilling rig under its agreement with Calvert Western. This is reflected by the following facts. The actual operation of the rig in drilling the wells was carried on by three four-men crews supplied by Calvert Western. Under paragraph 8.4 of the contract Calvert Western was obligated to keep and furnish to Love Enterprises an accurate record of the work performed and the formations drilled on an IADC-API Daily Drilling Report form. Love Enterprises directed Calvert Western's employees to call Diamond Shamrock daily and inform it of the work progress at the drilling sites. Paragraph 9 of the contract dealt with matters of ingress, egress, and location while paragraph 12 required Calvert Western to comply with all obligations of the contract concerning restoration of the land upon which Love was operating. Paragraph 14 provided detailed responsibilities relating to loss and damage of equipment. Under Exhibit "A" of the contract Calvert Western was to supply fuel, fuel lines, water storage tanks, mats for engines, boilers, motors and mud pumps, materials for "boxing in" the rig and derrick, and a rate of penetration recording device. In addition, Calvert Western supplied pickup trucks for transporting crews and supplies. In short, the May 8, 1981, agreement between Calvert Western and Love Enterprises was more than just the renting of a drilling rig. Rather it was a

comprehensive package deal under which Calvert Western also provided personnel, equipment and services.

We conclude the district court did not err in holding the May 8, 1981, agreement between Calvert Western and Love Enterprises was a drilling contract rather than a lease of personal property.

The second issue is whether the district court erred in holding Calvert Western was a subcontractor under Diamond Shamrock's June 5 and June 26, 1981, daywork drilling contracts with Love Enterprises.

If Calvert Western is not a subcontractor under the Diamond Shamrock-Love Enterprises contracts, then it cannot assert a subcontractor's lien pursuant to the oil and gas mechanic's lien statutes (K.S.A. 55-207, -208, -209 and -210).

Diamond Shamrock argues Calvert Western cannot be a subcontractor herein by virtue of the fact the Calvert Western-Love Enterprises contract was executed prior to and wholly independent of the Diamond Shamrock-Love Enterprises contracts. This argument has merit.

Corpus Juris Secundum, in its discussion on subcontractors' and mechanics' liens, has observed some courts define a subcontractor as one who has entered into a contract, express or implied, for the performance of an act with a *person who has already contracted for its performance.* 57 C.J.S., Mechanics' Liens § 98, p. 609. See also *Rogers v. Crane Co.,* 180 Okla. 139, 142, 68 P.2d 520 (1937); and 53 Am. Jur. 2d, Mechanics' Liens § 68, p. 580. In *Stewart v. Cunningham,* 219 Kan. 374, 548 P.2d 740 (1976), this court, when faced with an action to foreclose a contractor's lien for labor and materials, commented a contractor was one who furnished labor or materials under a contract direct with the owner for the improvement of property (57 C.J.S., Mechanics' Liens § 90, p. 602), while a subcontractor was one who assumed a portion of a contract from an original contractor or another subcontractor for the performance of all or part of the services or work which the other had obligated itself to perform under the contract with the owner (57 C.J.S., Mechanics' Liens § 98, pp. 608-09). 219 Kan. at 377. See also *Construction Materials, Inc. v. Becker,* 8 Kan. App. 2d 394, 397, 659 P.2d 243, *rev. denied* 233 Kan. 1091 (1983).

In order for an agreement to be a subcontract there must be a preexisting prime contract between a principal and a contractor,

the latter who then enters into an agreement with a third party, a subcontractor, for the third party to perform all or part of the prime contract.

In the instant action the prime contract between Love Enterprises and Diamond Shamrock to do drilling on the Pfeifer No. 3 site in Clark County did not come into existence until nearly a month *after* the Calvert Western-Love Enterprises daywork drilling contract of May 8, 1981, had been executed. The contract for the Reimer No. 2 site in Meade County was executed even later (June 26, 1981). Accordingly the May 8, 1981, contract between Calvert Western and Love Enterprises did not constitute a subcontract to the subsequent agreements between Love Enterprises and Diamond Shamrock. Therefore Calvert Western was not entitled to subcontractor's oil and gas liens and foreclosure thereon on Diamond Shamrock's Clark and Meade County leases. See generally McKay, *The Creation and Enforcement of Mechanics' Liens Against Leasehold and Equipment,* 8 J.B.A.K. 63 (1939); Annot., Assertion of Statutory Mechanic's or Materialman's Lien Against Oil and Gas Produced or Against Proceeds Attributable to Oil and Gas Sold, 59 A.L.R.3d 278; Annot., Building and Construction Contracts: Right of Subcontractor Who Has Dealt Only With Primary Contractor to Recover Against Property Owner in Quasi Contract, 62 A.L.R.3d 288; and Annot., Right of Subcontractor's Subcontractor or Materialman, or of Materialman's Materialman, to Mechanic's Lien, 24 A.L.R.4th 963.

We conclude the district court erred in holding Calvert Western: (1) was a subcontractor to the Diamond Shamrock-Love Enterprises contracts; (2) had valid subcontractor's oil and gas mechanics' liens on Diamond Shamrock's leases; and (3) was entitled to foreclosure of such oil and gas mechanics' liens.

The next three issues raised are as follows:

3. Whether the district court erred in granting judgment in favor of Calvert Western for an amount in excess of the contractual amounts under the Diamond Shamrock-Love Enterprises contracts.

4. Whether the district court erred in holding the September 25, 1981, Release of Judgment Lien executed by Calvert Western in favor of Love Enterprises did not satisfy the debt herein.

5. Whether Diamond Shamrock's refusal to permit Calvert Western to commence actual drilling on the Meade County lease defeated Calvert Western's lien on the Meade County lease.

By virtue of our previous conclusion that Calvert Western was not a subcontractor of the Diamond Shamrock-Love Enterprises contracts and hence not entitled to subcontractor liens on Diamond Shamrock's leases, issues 3, 4 and 5 are rendered moot and need not be determined.

The sixth issue is whether the district court erred in holding Speedy Oilfield Services had a valid oil and gas lien against Diamond Shamrock's Meade County lease and in ordering the foreclosure of same.

K.S.A. 55-213 provides:

*"Any person who transports or hauls oil-field equipment under express contract with the owner or operator of any gas or oil lease-hold interest in real property,* or the owner or operator of any gas pipe line or oil pipe line *or the owner of any oil-field equipment and material,* or with the trustee, agent, or receiver of any such owner, *shall have a lien upon interest of such owner in the oil-field equipment so transported and hauled.* Said lien shall include, in addition to the charge for hauling or transporting, labor performed, or materials used and expended in the transporting, erecting, dismantling, loading and unloading of any oil-field machinery, equipment or supplies hauled or transported and shall be of equal standing with the contractor's lien provided by K.S.A. 55-207." (Emphasis supplied.)

The work performed by Speedy Oilfield Services consisted wholly of transporting and hauling oil field equipment. Speedy concedes it is not entitled to a lien under 55-213 by virtue of the fact neither Love Enterprises nor Diamond Shamrock has any interest in the oil field equipment hauled to which the lien could attach.

Speedy Oilfield Service argues, however, the district court correctly held it was entitled to a subcontractor's lien under K.S.A. 55-207. We do not agree. K.S.A. 55-207 provides in pertinent part:

*"Any person, corporation* or copartnership *who shall under contract, express or implied, with the owner of any leasehold for oil and gas purposes* . . . or with the trustee or *agent of such owner, who shall perform labor or furnish material, machinery and oil-well supplies used in the digging, drilling, torpedoing, completing, operating or repairing* of any oil or gas well, or who shall furnish any oil-well supplies or perform any labor in constructing or putting together any of the machinery used in drilling, torpedoing, operating, completing

or repairing of any gas well, *shall have a lien upon the whole of such leasehold . . . .*" (Emphasis supplied.)

It is the position of Speedy Oilfield Service hauling and transporting oil field equipment is so closely related to "digging, drilling, torpedoing, completing, operating or repairing of any oil or gas well" it is entitled to a lien under 55-207 when it cannot avail itself of 55-213. We do not agree.

Oil and gas lien laws confer special privileges, are to be strictly construed against one claiming the privilege, and their scope is not to be extended beyond that clearly granted by the legislature. *Interlake, Inc. v. Kansas Power & Light*, 231 Kan. 251, 644 P.2d 385 (1982).

The legislature has specifically fixed the mechanic's lien rights of transporters and haulers of oil field equipment by enactment of K.S.A. 55-212, -213 and -214. Such liens extend only to such interest in the equipment as is possessed by the owner or operator of the lease with whom the transporter has contracted. A transporter or hauler of oil field equipment claiming the privilege of an oil and gas mechanic's lien must come within said transportation lien statutes if a lien is to be asserted. Additionally, the activities described in 55-207, digging, drilling, etc., all relate to services performed in the construction, repair, and operation of an oil and gas well and do not encompass services confined solely to transportation of equipment and incidentals necessary thereto.

We conclude the district court erred in holding Speedy Oilfield Service had a valid mechanic's lien under the Meade County lease of Diamond Shamrock and in allowing its foreclosure.

The judgments are reversed and the consolidated cases are remanded with directions to enter judgment for defendants in accordance with this decision.