No. 31,513

THE SOUTHWESTERN ELECTRICAL COMPANY, *Appellee*, v. GUY M. HUGHES et al., *Appellees* (THE WICHITA LOAN AND TRUST COMPANY, *Appellant*).

(30 P. 2d 114.)

Opinion filed March 10, 1934.

*V. Harris, M. P. Shearer* and *H. W. Hart,* all of Wichita, for the appellant.

*Z. Wetmore, George M. Ashford, W. A. Ayres, C. A. McCorkle, A. M. Cowan, J. D. Fair, George Austin Brown, Robert C. Foulston, George Siefkin, Sidney L. Foulston, Lester L. Morris, George B. Powers, George A. Jeffery, J. M. Burris, Ray H. Tinder, Charles B. Hudson* and *O. W. Helsel,* all of Wichita, for the appellees.

The opinion of the court was delivered by

BURCH, J.: The action was one by a mechanics' lien claimant to foreclose its liens. Various other mechanics' lien claimants and the owner of the real estate were made parties defendant. The Wichita Loan and Trust Company, a mortgagee, was made a party defendant. The mechanics' liens were held to be superior to the lien of the loan and trust company's mortgage, and it appeals.

Guy M. Hughes owned lots on which he desired to erect an apartment building. Construction of the building was not let to a general contractor, and Hughes himself, as owner-contractor, purchased the material and employed the labor he needed. Work was commenced on August 24, 1931. The basement was finished and cement for the concrete floor of the garage was poured before September 16. When the work was begun Hughes did not have sufficient funds to complete the building, and he arranged to borrow $6,000 from the loan and trust company. A mortgage securing a note for that sum was executed and was recorded on September 16. The loan and trust company advanced to Hughes, out of the proceeds of the loan, some items of expense connected with the loan, and in October and November made five advancements, totaling $2,000, which were to be used and were used to pay bills for labor and material. Bills of plaintiff and of others furnishing labor and material were not paid, and they perfected mechanics' liens. Since construction of the building was commenced before the mortgage was given, the mechanics' liens are to be preferred to the mortgage lien, unless some special reason exists for not according priority to the mechanics' liens.

The loan and trust company contends the Turner Coal and Material Company waived privilege to claim a lien. The court found the facts. Briefly, in the negotiations between Hughes and the loan and trust company, the loan and trust company insisted to Hughes that its mortgage must be a first lien and a lien prior to any lien for labor and material already furnished. Hughes told the loan and trust company he had purchased all material thus far from the Turner company. The loan and trust company required a

receipt or release from the Turner company for all material which it had furnished, and the Turner company gave Hughes just such a receipt. Hughes certified in writing to the loan and trust company that all labor to date had been paid and, acting on these instruments, the loan and trust company closed the loan. If the loan and trust company desired a waiver of lien for all material to be supplied in the future, it should have asked for it.

The loan and trust company contends the Metz Lumber Company waived privilege to claim a lien for material which it might furnish in the future. The Metz company, in fact, furnished a load of lumber which went into construction of the basement. The Metz company told Hughes there would be no trouble with the loan and trust company about that, and there was none. Hughes was already indebted to the Metz company, and the Metz company refused to sell any more material to Hughes unless he could procure a loan and arrange to use the proceeds to pay for material the Metz company might thereafter supply. Hughes procured the loan from the loan and trust company, the Metz company sold material to Hughes, and he did not pay for it.

The loan and trust company is the sole appellant. There was no finding that the loan and trust company knew anything about the Metz company's requirement that Hughes should put himself in funds before the Metz company would deal further, and the loan and trust company did not close the loan on the assumption the Metz company would look to proceeds of the loan only for pay. The mechanics' lien statute does not say a materialman may have a lien for material furnished with purpose and intent to acquire a lien. The statute gives a lien for material furnished. The Metz company was not put to election, at the beginning, whether it would look to proceeds of the loan for security, or to the real estate; and there was no finding nor evidence on which to base an inference that, if Hughes did not see that the Metz company was paid in full for future deliveries from proceeds of the loan, the Metz company would abandon security for any unpaid balance. Therefore, the contention of the loan and trust company that the Metz company waived lien is not well founded.

The loan and trust company contends it should have a lien coördinate with the mechanics' liens to the extent of $2,000, the amount it paid to Hughes, and which he paid on bills for labor and material. The loan and trust company simply paid to its borrower

the money to which he was entitled as the result of giving his note. Hughes was free to disburse the money for material or labor as he would. Hughes took no assignment of any account which he paid, and neither did the loan and trust company. Nobody filed any liens for the amounts of the claims, and nobody indicated any intention to preserve the accounts as lienable claims. They were simply paid, satisfied, and discharged, and there was nothing left on which to found a lien to which the loan and trust company could be subrogated. The loan and trust company received the benefit of its payments to Hughes through improvement of its mortgage security by reduction in number and amount of possible liens; and for the mortgagee to invoke subrogation to obtain a lien coördinate with that of mechanics' lien holders, is to deny to them benefit of the mechanics' lien statute. There is no decision of this court which authorizes such a perversion of the doctrine of subrogation.

The loan and trust company contends the amount of the Metz company lien should be reduced to include only those items for material which were furnished within four months of the date the lien was filed. This would reduce the amount of the lien which was allowed, $2,856.19, to a small sum. The basis of the contention is that each item, as deliveries were made from day to day, was furnished under a separate contract.

There was evidence Hughes had previously erected an apartment building of substantially the same type as the one in contemplation, and knew the approximate amount of the various classes of material. He did some shopping, and went to the Metz company. Hughes and the Metz company manager talked about material and about prices, and Hughes said he would buy as much material as he could from the Metz company if its prices were right. An estimate of approximate cost of the building was made, and prices were agreed on. There was no subsequent important change in the building plans. The agreed prices were based on amount of material which had been discussed, and there was no later change of price. There was no definite agreement that Hughes would buy any specified quantity of material. The court found that, relying on the prices quoted for material which he required, Hughes ordered material from time to time as needed in construction of the building, and that the Metz company charged the items to him on a running account. Lien for material was filed within four months from delivery of the last item.

Hughes testified the material "was charged out to me by the load," and he was given delivery tickets. The court is unable to conclude that each ticket represented a separate transaction, and for purpose of lien as many independent contracts were created as there were loads. The first, last and all intermediate deliveries were made pursuant to the original negotiation, and constituted parts of one continuing, connected transaction, carried on the books of the materialman in a continuous running account. Under such circumstances, the law regards the obligation of the owner-contractor as arising on a single contract to pay the whole bill for whatever was ordered and furnished. (40 C. J. 198, § 236.)

The court properly applied the rule just indicated to the Turner company's account. The cases of *Baxter v. Oil Co.*, 111 Kan. 621, 208 Pac. 568, and *Sonner v. Mollohan*, 112 Kan. 148, 210 Pac. 649, were cases involving what the court was able to say were in fact separate contracts. In the latter case, the distinction between furnishing material under "a continuing contract" and under "several disconnected or separate contracts" was expressly recognized.

The evidence was that drayage for delivery of material was an element of price, and the court properly allowed lien for drayage. (*Road Supply & Metal Co. v. Casualty & Surety Co.*, 121 Kan. 299, 246 Pac. 503.) The evidence was that the lots were low, and dirt had to be hauled in to grade up around the house and garage. Grading necessary under the plan of construction to bring the lot up may be a feature of construction quite as essential as the building of steps to get up and down. If so, grading is a lienable item. (*Reid v. Berry*, 178 Mass. 260.) The district court properly allowed lien for grading. Complaints of the judgment which have not been referred to have been considered, and are held to be without substantial merit.

The judgment of the district court is affirmed.