Nos. 43,822 and 43,860

THOMPSON TRANSPORT COMPANY, INC., a Kansas Corporation, *Appellant*, v. MIDDLESTATES CONSTRUCTION COMPANY, a Nebraska Corporation, (*Defendant*) and TRINITY UNIVERSAL INSURANCE CO., a Texas Corporation, *Appellee*.

(397 P. 2d 368)

Opinion filed December 12, 1964.

*Patrick L. Connolly,* of Topeka, argued the cause, and *Milford M. Magee,* also of Topeka, was with him on the brief for the appellant.

*Robert T. Cornwell,* of Wichita, argued the cause, and *Wayne Coulson, Paul R. Kitch, Dale M. Stucky, Donald R. Newkirk, Robert J. Hill, Gerrit H. Wormhoudt, Philip Kassebaum, John E. Rees, Willard B. Thompson* and *David .W. Buxton,* all of Wichita, were with him on the brief for the appellee. *Hugo T. Wedell* and *Homer V. Gooing,* both of Wichita, of counsel.

The opinion of the court was delivered by

SCHROEDER, J.: This is an action by Thompson Transport Company, Inc. (appellant) to recover freight charges for transporting bituminous base (road mix) materials for Middlestates Construction Company. Middlestates had a road construction contract with the State Highway Commission of Kansas. The appellant sued Middlestates and also Trinity Universal Insurance Company (appellee), claiming such transportation charges were covered by the G. S. 1949, 68-410 bond signed by Trinity as surety. The trial court

entered judgment for Trinity, and appeal has been duly perfected by Thompson Transport Company, Inc.

The question is whether charges for transporting such road materials are covered by the bond given pursuant to G. S. 1949, 68-410.

The preliminary facts and procedural steps necessary to focus the foregoing issue on appeal are conceded by the parties, and we shall not dwell upon them. The facts necessary for a determination of this appeal have been stipulated by the parties. In pertinent part they provide:

"5. That defendant Middlestates Construction Co. on or about July 6, 1961, entered into a contract with the State Highway Commission of Kansas for the construction of 6.007 miles of roadway with a bituminous base (road mix) in Barton County, Kansas, and identified as Project 4-5 K 5097 (2); that a copy of said contract is attached hereto as Stipulation Exhibit No. I, and is incorporated herein as if set out in full; *that said contract incorporated and included by reference the 1960 Kansas Standard Specifications, a copy of which is attached hereto as Stipulation Exhibit No. II and incorporated herein as if set out in full,* . . .

. . . . . . . . . . . . . .

"6. That on the 6th day of July, 1961, defendant Middlestates Construction Co., as principal, and defendant Trinity Universal Insurance Co., as surety, executed a G. S. 1949, 68-410, *statutory contract bond,* which was approved by and filed with the State Highway Commission of Kansas; and that a copy of said bond is attached hereto as Stipulation Exhibit No. III and is incorporated herein as if fully set out.

"7. That defendant Middlestates Construction Co., in the performance of said contract, contracted with the Mobil Oil Company for the purchase of bituminous base (road mix) from the latter's Augusta, Kansas, refinery, which purchase was F. O. B. the refinery.

"8. Pursuant to request by defendant Middlestates Construction Co., on August 9, 1961, plaintiff began transporting said bituminous base (road mix) from the Mobil Oil Company refinery at Augusta, Kansas, to Barton County, Kansas, where it was stored in tanks at the project site and thereafter used and consumed in the construction of said public highway; and that plaintiff continued transporting said materials until November 27, 1961.

"9. Defendant Middlestates Construction Co. is indebted to plaintiff for transporting said materials in the sum of $9,617.13, for which amount plaintiff has made demand, but defendant Middlestates Construction Co. has failed and neglected to pay the same.

"10. That defendant Middlestates Construction Co. was given authority for temporary suspension of work on February 2, 1962, ending on or about March 17, 1962; that thereafter the Highway Commission for the State of Kansas made written demands upon said defendant on March 19 and 30, 1962, to begin work; that the Kansas Highway Commission served demand and notice upon defendant Middlestates Construction Co., under Section A 8-8, of 1960 Standard Specifications; that said defendant refused to resume work;

and that the project was assumed by Mr. Charles Hulme on April 7, 1962, who completed the project on April 20, 1962.

"11. That subsequent to the defendant Middlestates Construction Company's refusal to pay plaintiff's account, plaintiff made demand for payment of the same upon Trinity Universal Insurance Co. as surety under said statutory contract bond; that defendant *Trinity Universal Insurance Co. informed plaintiff of its contention that its freight bill was not covered by said statutory contract bond and refused to pay the same* or any part thereof and still refuses to do so.

"12. That on or about the 9th day of April, 1962, plaintiff filed an itemized statement under oath with the State Highway Commission, a copy of which is attached hereto as Exhibit No. IV, and is incorporated herein as if set out in full; that said itemized statement is true and correct.

"13. That in transporting said materials, plaintiff used and consumed labor of its employees, its trucks and gasoline, lubricating oils, fuel oils, greases and similar items necessary to transport bituminous base (road mix) from Augusta, Kansas, to the storage tanks at the project site in Barton County, Kansas; that said account is composed entirely of plaintiff's charges for transporting said materials to the construction site as hereinbefore alleged whereby they were used in and consumed in the construction and completion of this project." (Emphasis added.)

Pursuant to stipulation No. 9, wherein Middlestates stipulated to the amount of its indebtedness to the appellant, the trial court entered judgment against Middlestates, and it did not appeal. In its contract with the State Highway Commission Middlestates agreed *at its "own proper cost and expense to do all the work, furnish all materials and labor necessary to do the work in accordance with the plans and specifications herein described, and in full compliance with all the terms of this agreement* and the requirements of the engineer under it." (Emphasis added.)

The contract further provided:

"It is also understood and agreed that the advertisement, *proposal bond, specifications and plans hereto attached, or hereinbefore referred to are all essential documents of this contract and are a part thereof.*" (Emphasis added.)

The statutory contract bond entered into by Middlestates, as principal, and Trinity Universal Insurance Company, as surety, firmly bound Middlestates and Trinity unto the State of Kansas in the penal sum of $182,983.82 (the full amount of the road construction contract) to be paid the State Highway Commission of Kansas on the conditions set forth in the bond.

The condition of the bond provides:

". . . If the Principal *shall fully and faithfully perform such contract* in every respect and properly and promptly complete the work *in accordance with the provisions of said contract,* plans and specifications, and any additions

to or changes in said contract, . . . *and shall pay all indebtedness incurred,* whether *by said Principal,* subcontractor or otherwise, for supplies, material or labor furnished, used or consumed in connection with or in or about the construction of the project for which said contract has been let, including gasoline, lubricating oil, fuel oils, greases, coal and other items used or consumed *in carrying out the provisions of said contract,* and shall fully indemnify, compensate and pay the said State Highway Commission of Kansas for any and all loss, costs, damages or expense, which it may suffer, or be held responsible for, by reason of any negligence, defective condition, default, failure or miscarriage in the performance of said contract, whether by said Principal, subcontractor or otherwise, then this obligation shall be void, otherwise shall remain in full force and effect." (Emphasis added.)

The trial court determined the matter in favor of the appellee in accordance with the appellee's theory of the case. The reason for its decision is set forth in the following paragraph of its memorandum decision:

"This plaintiff is excluded from bond coverage because he did not furnish 'supplies, materials or labor' under G. S. 1949, 68-410, and the bond here involved executed in accordance with the mandate of that statute. The decisions in Road Supply and Metal Company v. Casualty and Surety Company, 121 Kan. 299, 246 P. 503; Southwestern Electrical Company v. Hughes, 139 Kan. 89, 30 P. 2d 114; American National Bank v. Central Construction Company, 160 Kan. 400, 163 P. 2d 369; and Thomasson v. Kirkpatrick, 174 Kan. 52, 254 P. 2d 329, would indicate transportation is neither supplies, materials nor labor, unless includable because of a unit charge for supplies or materials *as delivered.*"

Upon entry of judgment by the trial court a motion for a new trial was filed and overruled, and appeal has been duly perfected.

In stipulation No. 5 the parties concede the contract between Middlestates and the State Highway Commission incorporated and included by reference the 1960 Standard Specifications for State Road and Bridge Construction of the State Highway Commission of Kansas. In the lower court a copy of these Standard Specifications was attached to the written stipulations as "Stipulation Exhibit No. II" and incorporated in the stipulations as if set out in full.

In these Standard Specifications under Section A4 the following is set forth:

"Scope of Work

"A4-1 INTENT OF THE PLANS AND SPECIFICATIONS—The intent of the Plans and these Specifications is to provide for the execution and completion in every detail of the work described herein, *and it is understood that the Contractor for all or any part will furnish all* labor, material, equipment, tools, *transportation,* and necessary supplies, *such as may be required to execute the Contract in a satisfactory and workmanlike manner and in accordance with the Plans, Specifications, and terms of the Contract."* (p. 30.) (Emphasis added.)

In these Standard Specifications under Section A9 the following is set forth:

"MEASUREMENT AND PAYMENT

. . . . . . . . . . . . . . . .

"A9-2   SCOPE OF PAYMENT—The Contractor shall accept the compensation, as herein provided, *in full payment for furnishing all materials,* labor, tools, and equipment *necessary* and for *performing all work contemplated and embraced under the Contract;* . . . and for completing the work according to the Plans and Specifications." (Emphasis added.)

The appellee challenges the appellant's reference to sections A4 and A9-2 of the foregoing 1960 Standard Specifications on the ground that such evidence is not contained in the abstract or counter abstract. The appellant, however, argues this court is entitled to take judicial knowledge of these Standard Specifications.

It is immaterial to determine whether this court is entitled to take judicial notice of these Standard Specifications because the parties in this case have entered into a stipulation and have incorporated them as a part of their written stipulations which were submitted to the lower court.

The trial court in its memorandum decision referred to the language of section A4 of the Standard Specifications of the State Highway Commission of Kansas, Edition 1960, but felt that such section merely concerned the obligation of the contractor, and gave such evidence no further consideration in determining the issue.

Under the circumstances here presented this court, if necessary, could call for the record before the lower court to determine the issue raised on appeal. Here, however, this is unnecessary because the Standard Specifications for State Road and Bridge Construction of the State Highway Commission of Kansas, Edition 1960, are published by the State Highway Commission and are readily available for reference. Their accuracy is not challenged by the appellee in the instant case.

By the terms of the contract between Middlestates and the State Highway Commission the Standard Specifications of the State Highway Commission, Edition 1960, including sections A4 and A9-2, were a part thereof. Thus, Middlestates by its contract was bound to full compliance with all of the terms of the contract, which included an obligation to furnish all transportation and all materials as may be required to execute the contract in accordance with its terms, at its "own proper cost and expense," for which Middlestates was entitled to accept compensation from the State Highway Commission under its road construction contract.

The appellee states the issue presented on appeal as follows:

"Are freight charges for transporting supplies and materials covered by a G. S. 1949, 68-410, bond conditioned that the contractor will pay for all 'supplies, material or labor furnished, used or consumed in connection with or in or about the construction' of a highway?"

We think the appellee's statement of the question over-simplifies the issue. The appellee contends that G. S. 1949, 68-410 bonds do not cover freight charges for transporting supplies and materials. Its argument on this point proceeds as follows:

"Prior to 1887, mechanic's liens could be filed against public improvements. (*Sullivan v. School District*, 39 Kan. 347, 18 Pac. 287; *School District v. Conrad*, 17 Kan. 522; *Wilson v. School District*, 17 Kan. 104.) In that year, the legislature enacted the predecessor to G. S. 1949, 60-1413, and required all public construction, including highway, (*Road Supply & Metal Co. v. Casualty & Surety Co.*, 121 Kan. 299, 246 Pac. 503) to be bonded against claims for such labor, supplies and materials as would substantiate mechanic's liens and provided that no mechanic's liens could attach to public improvements. (Laws 1887, Ch. 179, Secs. 1 and 2.)

"In addition, prior to 1933, all highway construction contracts had to be covered by faithful performance bonds. (Laws 1929, Ch. 225, Sec. 1. Laborers and materialmen were not protected by this bond [*Cavanaugh v. Globe Indemnity Co.*, 141 Kan. 774, 44 P. 2d 216].) In that year, the legislature enacted the predecessor to G. S., 68-410. (Laws 1933, Ch. 239.) That enactment consolidated the statute requiring faithful performance bonds and the statute requiring mechanic's lien bonds into a single statute. The provisions concerning mechanic's lien bonds were copied from the predecessor to G. S. 1949, 60-1413. (Laws 1931, Ch. 227, Sec. 1, employed the phrase 'public improvements and buildings,' while G. S. 1949, 68-410 speaks of 'projects.' This difference is immaterial.).

"Decisions construing G. S. 1949, 60-1413, are directly in point in determining the coverage of G. S. 1949, 68-410, bonds.

"Such bonds are a substitute for mechanic's liens and *only* cover such labor, supplies and materials as would support a mechanic's lien. (*Road Supply and Metal Co. v. Bechtelheimer*, 119 Kan. 560, 240 Pac. 846.) Transportation charges are not lienable and are not covered by such statutory bonds. (Transportation charges can be the basis of a mechanic's lien, and therefore covered by a statutory bond given in lieu of lien rights, if they are a part of the single price charged by a materialman for supplies or materials [*Thomasson v. Kirkpatrick*, 174 Kan. 52, 254 P. 2d 329; *Southwestern Electrical Co. v. Hughes*, 139 Kan. 89, 30 P. 2d 114; *Road Supply & Metal Co. v. Casualty & Surety Co.*, 121 Kan. 299, 246 Pac. 503].)"

In view of recent decisions it is improper to rely upon the older cases cited by the appellee in construing separate statutes in accordance with the foregoing argument. *Traction Co. v. Brick Co.*, 112 Kan. 774, 213 Pac. 169, and *American Nat'l Bank v. Central Con-*

*struction Co.,* 160 Kan. 400, 163 P. 2d 369, relied on by the appellee, are readily distinguishable.

In *Wolfe Tire Corp v. Stanton,* 133 Kan. 713, 3 P. 2d 698, the court was confronted with the act of 1925, amending R. S. 1923, 60-1413. Prior to the 1925 enactment the statutory bond (60-1413) only provided for payment of indebtedness incurred for material and labor which entered into and became a part of a public building or a public improvement and remained with it. The amended act enlarged the former one by adding "supplies" to "labor and material furnished," and also the phrase, "consumed in connection with the construction of the road." In the opinion the court said:

"There is a further contention that the supplies furnished by the plaintiff were not lienable, in this, that the gas and oil were furnished to subcontractors and that under the mechanic's-lien law supplies or labor furnished by one subcontractor to another does not result in a lien which is enforceable. *It should be noted that the act is not one providing for mechanics' liens, but is a substitute remedy for such liens. The action is upon a bond and its terms fix the obligations of those signing it. . . ."* (p. 716.) (Emphasis added.)

A recent decision confirming that the obligations of those signing a statutory bond are fixed by the terms of the bond is *Leidigh & Havens Lumber Co. v. Bollinger,* 193 Kan. 600, 396 P. 2d 320, decided November 7, 1964. There a statutory bond was given by a general contractor pursuant to G. S. 1949, 60-1413 and 60-1414, for the construction of a public building to secure payment for the labor or materials furnished, used or consumed in connection with or in or about the construction of such a building. The contention there advanced was that the lumber company could recover only if it was entitled to an enforceable mechanic's lien under G. S. 1949, 60-1403, or if its evidence showed a contractual obligation on the part of the general contractor to pay for the materials purchased by the subcontractor from the plaintiff. In holding neither requirement necessary, the court said:

". . . The surety bond covered the construction of the building, and all labor and materials expended on construction embraced in Bollinger's contract were furnished by him, whether furnished directly or indirectly through Bair, whom he employed. Bollinger's contract with the state expressly provided that he would 'furnish all labor, materials, and equipment necessary for the general construction work' to complete the building. *The execution of the surety bond as required by G. S. 1949, 60-1413 shows an intention to comply with the contract and the law. . . ."* (p. 602.) (Emphasis added.)

By construing *Wolfe Tire Corp. v. Stanton,* supra, and *Leidigh & Havens Lumber Co. v. Bollinger,* supra, together, as applied to the

facts in the instant case, the rule is established that the obligations of those signing a statutory contract bond are fixed by the terms of the bond, and if the bond shows an intention to guarantee compliance with the terms of the contract pursuant to which the bond is given, the surety signing the bond becomes the surety for the full performance of all the terms of the contract.

In construing the condition of the statutory contract bond given in the instant case to ascertain the intention of the parties signing it, we do not think it proper to compartmentalize the condition by making reference to separate statutes which preceded the enactment of G. S. 1949, 68-410. In other words, when the principal in the bond with its surety undertake to fully and faithfully perform its contract with the State Highway Commission in every respect *and complete the work in accordance with the provisions of the contract,* the principal with its surety, in effect, guarantee to pay all indebtedness incurred in carrying out the provisions of the contract, and subsequent provisions in the condition of the bond which follow the language of the statute do not detract from such commitment. Considering the specific language employed in the condition of the bond, we do not think it could be said Middlestates, as principal, and the appellee, as surety, executed a bond which guaranteed something less than full compliance with the provisions of Middlestates' road construction contract with the State Highway Commission. (See, *Shannon v. Abrams,* 98 Kan. 26, 157 Pac. 449.)

We hold the execution of the statutory contract bond in the instant case as required by G. S. 1949, 68-410 shows an intention on the part of the obligors who signed the bond to comply fully with the provisions of the contract entered into between Middlestates and the State Highway Commission and to comply with the provisions of the statute. Accordingly the appellee, as surety on the bond, is obligated by the provisions of the statutory contract bond in the instant case to make good for the transportation charges of the appellant. (G. S. 1949, 68-410.)

The appellant contends it is entitled to an allowance of attorney's fees under G. S. 1961 Supp., 40-256.

While Trinity Universal Insurance Company is merely a surety on the 68-410 bond in this case, G. S. 1949, 40-201 defines an insurance company to include companies writing contracts of indemnity or suretyship upon any type of risk or loss.

The provisions of 40-256, *supra,* which authorize the allowance of a reasonable attorney fee for the insured in all actions where

judgment is rendered against an insurance company, condition such allowance upon the proviso that such company has refused without just cause or excuse to pay in accordance with the terms of its contract.

In our opinion the appellee, Trinity Universal Insurance Company, has refused without just cause or excuse to pay in accordance with the terms of its contract and the appellant is entitled to an allowance of a reasonable attorney fee. (*Wolf v. Mutual Benefit Health & Accident Association*, 188 Kan. 694, 366 P. 2d 219.)

The judgment of the lower court is reversed with directions to make an allowance of a reasonable attorney fee for the appellant.