No. 47,272

Nelcson F. Hass, *Appellant*, v. The Preferred Risk Mutual Insurance Company, *Appellee.*

(522 P. 2d 438)

Opinion filed May 11, 1974.

*Harry L. Eddy*, of Wichita, argued the cause and was on the brief for the appellant.

*Darrell D. Kellogg*, of Kahrs, Nelson, Fanning, Hite and Kellogg, of Wichita, argued the cause, and *Clark R. Nelson*, of the same firm was with him on the brief for the appellee.

The opinion of the court was delivered by

Kaul, J.: This is an action by an insured against his insurer on an automobile policy to recover losses stemming from an automobile collision and for additional damages alleged to have resulted from

the investigation and handling of his claim by adjusters employed by the insurer.

The case was tried to a jury—the primary issue being whether the alleged damages and injuries sustained were a result of the insured's own intentional conduct. Damages for injury resulting from the intentional conduct of the insured is specifically excluded from coverage under the policy of insurance in question. The jury found adversely to insured and this appeal followed.

For convenience the appellant will be referred to as Hass, the plaintiff or the insured, and appellee as the defendant or Preferred Risk.

Facts necessary to our discussion are summarized as follows;

In the late afternoon of May 23, 1971, Hass was driving his station wagon on a street approaching the intersection of 29th and North Broadway in Wichita. Apparently, Hass had done something which antagonized another automobile operator, Danny L. Johnson. As Hass approached the intersection the traffic light turned red and he stopped his station wagon. The other driver, Danny L. Johnson, stopped immediately behind the Hass automobile. The events which followed are described by Johnson in his testimony which is narrated as follows:

"At the intersection of 29th and Broadway, I was behind the car being driven by Mr. Hass. The light was red. I got out of my car to go up and ask him what his problem was, I know I had never seen him before, and I didn't care to get involved with another accident, so I walked up to the car and started to ask him what he was up to. I don't even think I got a word out and he swung a ball bat at me, and I reached in and hit him, took the ball bat away and threw it over the railroad tracks. I just turned around and started walking back to my car, and the next thing I know he made a u-turn and I had just turned around in time to see him and jumped up backwards onto my hood and he hit my car, veered off and I saw him go over to the parking lot."

Hass testified that as he was sitting in his station wagon, someone approached and hit him; and that he remembered nothing after the blow until he awoke in the coronary care unit of St. Joseph Hospital.

Other eyewitnesses testified that they saw Johnson at the Hass station wagon and that when he turned away he had a child's baseball bat in his hand. Several witnesses testified that they saw Johnson return toward his automobile, Hass's U-turn and the subsequent collision substantially as those events were described by Johnson. At some point during the series of events, Hass suffered a disabling heart seizure. There was some discrepancy in the medical testimony

concerning the effect of the heart seizure. Dr. Louis Morgan called on behalf of Hass testified: "I think Mr. Nelcson Hass had the capacity to form an intent under the physical circumstances which were described to me."; but he did not think Hass "was conscious of everything that was going on." Dr. Charles Williams was called by defendant. He testified that in his opinion Hass was physically and mentally capable of deliberately driving his car forward, making a U-turn and driving his car into the Johnson car.

After being notified of the incident a local officer of defendant Preferred Risk employed Francis Schneweis of Chesapeake Adjusters, Inc., to investigate the property damaged. Schneweis was unable to talk to Hass, but did interview his wife and uncle and contacted Hass's attorney, Gary Hanna, whose principal concern was getting Hass released from criminal liability. According to Schneweis he was taken off the case when it appeared there would be a claim for personal injuries since his company did not adjust bodily injury claims.

Bruce Wilson, of Kansas Claims Service of Wichita, Inc., took over the adjustment investigation from Schneweis on June 2, 1971. Wilson obtained statements from the eyewitnesses and Hass's physician, Dr. Morgan. He also contacted Hanna, Hass's attorney.

After the adjustment investigation was completed, Preferred Risk determined the incident was not covered by the policy and so informed Hass. Thereafter this litigation was commenced.

In his petition plaintiff alleged coverage under the policy, negligence on the part of Preferred Risk in its investigation of the claim, and further alleged a conflict of interest on the part of Preferred Risk. Plaintiff sought damages and attorney fees on each theory. Following the response of plaintiff to defendant's request for admissions a pretrial conference was held in which the issues were defined.

In this posture the case came on for trial to a jury. At the close of plaintiff's evidence, defendant moved for a special summary judgment or directed verdict. During the course of the argument on the motion, plaintiff moved to amend his petition to include a claim for $25,000.00 punitive damages. The trial court sustained defendant's motion as to the second and third causes of action; respectively, negligence and conflict of interest. Plaintiff's motion to amend by adding a claim for punitive damages was overruled. Thereafter, defendant submitted its evidence and the case was

submitted to the jury on plaintiff's first cause of action for breach of contract which involved the primary issue whether plaintiff's loss was caused by his own intentional act. The jury returned a verdict for defendant; plaintiff's motion for a new trial was overruled; and this appeal followed:

Plaintiff raises seven points of error on appeal which we have carefully examined. However, in view of our holding we have concluded that consideration, individually, of each point is unnecessary.

We will first consider plaintiff's contention that the trial court erred in overruling his motion to amend his petition to include punitive damages. This court has repeatedly held that a trial court has broad discretionary powers regarding the amendment of pleadings and that the allowance or denial of the same will not constitute grounds for reversal unless it affirmatively appears that the substantial rights of the adverse party were affected and the ruling constituted a clear abuse of discretion. (*Ballhorst v. Hahner-Foreman-Cale, Inc.*, 207 Kan. 89, 484 P. 2d 38; *Trimble, Administrator v. Coleman Co., Inc.*, 200 Kan. 350, 437 P. 2d 219; and *Hoover Equipment Co. v. Smith*, 198 Kan. 127, 422 P. 2d 914.) In the instant case the trial court's refusal to grant the motion to amend was within its sound discretion. Moreover, it appears the granting of the motion would not have been justified in any event since Hass's only remaining cause of action at the time of the ruling was for breach of a contract of insurance. In *Moffet v. Kansas City Fire & Marine Ins. Co.*, 173 Kan. 52, 244 P. 2d 228, this court considered the question whether punitive damages could properly follow the breach of an insurance contract, and in this connection we stated:

". . . Mere refusal to pay insurance cannot constitute wanton or malicious conduct when, as here, an actual controversy exists with respect to liability on the policy. If this were not the rule punitive or exemplary damages could be recovered in every action involving a refusal to pay an insurance policy. . . ." (p. 58.)

The remainder of plaintiff's arguments are dependent, in our opinion, upon our resolution of his contention that the trial court erred in failing to set aside the verdict of the jury and enter judgment for plaintiff.

It is well-settled that on appellate review this court will not weigh the evidence or consider the credibility of witnesses. Where a jury's verdict is attacked on the ground of insufficiency of the

evidence or as being contrary to the evidence, this court will determine only whether there is any substantial competent evidence to support the verdict. (*Lehar v. Rogers,* 208 Kan. 831, 494 P. 2d 1124; and *Brohan v. Nafziger,* 206 Kan. 58, 476 P. 2d 649.) It is also a basic rule of appellate review that in testing evidence, we are required to consider the evidence in the light most favorable to the party who prevailed below. (see *Matthews v. Travelers Insurance Co.,* 212 Kan. 292, 510 P. 2d 1315, and cases cited therein.)

The testimony in the instant case is ample to support the finding of the jury. Each of the parties presented a physician who testified as an expert witness. Both physicians indicated that Hass could have intended to cause the harm which he did in fact cause under the circumstances in question. The record reveals that Hass merely testified that he had a loss of memory.

Since the jury returned a general verdict for the defendant, this court on appellate review must conclude that the jury resolved the issue of intentional conduct as excluded under the terms of the policy against the insured. (*Byers v. Hesston Appliance, Inc.,* 212 Kan. 125, 509 P. 2d 1151; and *Phillips v. Hartford Accident & I. Co.,* 157 Kan. 581, 142 P. 2d 704.)

Plaintiff urges error on the part of the trial court in granting partial summary judgment as to Counts II and III which related to the insurer's handling of the investigation into Hass's claim. Concerning this contention we should first point out that plaintiff submitted no evidence as to standards of adjustment procedures which he claims were violated. Defendant's witness Wilson, on the other hand, testified that he had been an insurance adjuster for thirteen years. He described adjustment procedures and testified that his investigation in this case conformed to good adjusting practice in the community. In support of his argument on this point plaintiff cites the cases of *Spruill Motors, Inc. v. Universal Underwriters Ins. Co.,* 212 Kan. 681, 512 P. 2d 403; and *Yeager v. National Cooperative Refinery Ass'n,* 205 Kan. 504, 470 P. 2d 797.

*Spruill Motors* deals with the duty of an insurer to defend an action by a third party against its insured where the pleadings allege intentional conduct on the part of the insured which is not within the scope of policy coverage. Although the case recognizes a duty to defend where the insurer knows or has a reasonable opportunity to discover that there is a possibility of coverage, nothing is said in the opinion which would support plaintiff's position that

the insurer in the instant case committed some irregularity or breach of duty in its investigation of the instant claim. Preferred Risk had a duty to investigate the facts since the possibility of coverage existed. The evidence is that on notice it proceeded to fully investigate the facts surrounding the incident and then concluded no coverage existed because the investigation revealed plaintiff's act to be intentional. As we have previously stated, the jury's general verdict indicates it found the position of Preferred Risk with regard to the intentional conduct of the insured was justified. In our opinion, this disposes of any claim which Hass may have asserted against his insurer regarding the handling and investigation of his claim.

The *Yeager* case involved a dispute over title to mineral interests in certain Oklahoma lands and a subsequent action for accounting alleging wrongful interference with a contract relating to efforts to obtain a valid lease of the lands in question. This court did recognize that it is possible for a breach of duty arising out of circumstances surrounding a contractual transaction to constitute an independent tort. The issue in *Yeager* arose in determining the applicable statute of limitations. The case does not support plaintiff's position since it involved an entirely different set of facts and circumstances, not analogous in any way to the alleged breach of an insurance contract or any insurrounding duties with which we are concerned here.

Rules followed in this jurisdiction pertaining to damages recoverable in an action based upon breach of contract are set out and discussed in *Hess v. Jarboe*, 201 Kan. 705, 443 P. 2d 294, wherein we said:

"In actions based upon a breach of a contract the damages recoverable are those which might reasonably have been anticipated by the parties and are limited to pecuniary loss which naturally occurs as a proximate result of the breach. (citing cases.)" (p. 708.)

And further in the opinion an exception to the general rule was recognized:

"An exception to this general rule is recognized when some independent tort or wrong results in additional injury which justifies the assessment of punitive damages by way of punishment of the wrongdoer. In such a case the proof of the independent tort must indicate the presence of malice, fraud or wanton disregard for the rights of others." (p. 709.)

In the instant case there is no evidence which supports plaintiff's theory of an independent tort or his claim for punitive damages. To

the contrary, defendant's evidence discloses that all witnesses whose testimony might be relevant were interviewed and in this connection, Wilson testified that the eyewitnesses were unanimous that the insured intentionally ran into claimant's (Johnson's) vehicle.

Actually, the jury's verdict eliminated any question as to the breach of duty on the part of the insurer to the insured.

Other points of error raised by plaintiff are either cumulative or repetitive and, therefore, merit no further discussion.

The judgment is affirmed.