(576 P.2d 702)
No. 49,372

PATRICIA FRICKEY, A Minor By and Through JAMES H. FRICKEY and KAY T. FRICKEY, Her Parents and Natural Guardians, *Appellant,* v. EQUITY MUTUAL INSURANCE COMPANY and FARMERS INSURANCE COMPANY, INC., *Appellees.*

Petition for review denied May 5, 1978.

Opinion filed March 31, 1978.

*Ward P. Ferguson* of Weelborg, Embers & Ferguson, Chtd., of McPherson, for the appellant.

*John W. Mize* of Clark, Mize & Linville, Chartered, of Salina, for appellee Equity Mutual Insurance Company.

*David S. Knudson* of King, Stokes, Knudson & Nitz, Chartered, of Salina, for appellee Farmers Insurance Company, Inc.

Before REES, P.J., SWINEHART and MEYER, JJ.

MEYER, J.: On June 15, 1975, one Bradley Holm picked up plaintiff at the Sonic Drive-In in McPherson, Kansas, to drive around awhile and then to take plaintiff home. Plaintiff asked to drive the car and Bradley Holm permitted her to do so. Plaintiff was 14 years of age at the time and had no driver's license. When plaintiff appeared to have trouble with the clutch, Bradley Holm shifted gears for her while she steered the car and operated the accelerator. As plaintiff turned a corner, she collided with a parked car, forcing it against a second parked car. All three cars were damaged.

Although the car which plaintiff was driving was titled in the

name of Arlie Holm (Bradley Holm's father) only, it is undisputed that Bradley Holm paid for the car, that he paid for its maintenance and upkeep, and that he had the unrestricted use of it.

The owners of the parked cars and their insurers claimed damages from plaintiff, and plaintiff in turn demanded coverage from both her father's insurance carrier, Farmers Insurance Company, Inc. (hereinafter referred to as "Farmers"), and from Arlie Holm's insurance carrier, Equity Mutual Insurance Company (hereinafter referred to as "Equity"). Both insurance carriers denied coverage. In November, 1975, the owners of one of the damaged parked cars, the Hobsons, sued the plaintiff. Neither Farmers nor Equity appeared to defend plaintiff in this case. However, on May 7, 1976, Equity paid the Hobsons (the owners of one of the damaged parked cars) for their loss, and on June 21, 1976, they paid the Hasletts for the damage to their parked car. On May 18, 1976, the Hobsons dismissed their action against the Holms; and although suit was never filed by the Hasletts, their damages, as aforesaid, have now been paid and the statute of limitations has now run.

Meanwhile, on December 3, 1975, plaintiff filed her action against both Equity and Farmers, praying for statutory attorney fees, damages for mental anguish and for punitive damages.

Both Farmers and Equity filed motions for summary judgment, both of which were sustained by the trial court on November 5, 1976 (journal entry filed of record on December 3, 1976); hence this appeal.

Plaintiff claims the following as error by the trial court:

1. In granting the motions of the defendants for a summary judgment inasmuch as there are genuine issues as to material facts;

2. In making its findings of fact and conclusions of law on the defendants' motions for summary judgment as reflected in the journal entry of judgment of November 5, 1976;

3. In having no basis in fact or in law for the court's decision of November 5, 1976; and,

4. In failing to consider and to differentiate between attorney fees for the defense of the plaintiff under the insurance policies and the attorney fees incurred in establishing coverage in this action.

Equity alleges:

1. That it acted in good faith in denying plaintiff's request for coverage, precluding any claim for attorney fees; and,

2. That as a matter of law plaintiff is precluded from recovering punitive damages or damages for mental anguish.

Farmers alleges it exercised good faith in this litigation for the following assigned reasons:

1. Equity had primary coverage; or,

2. If Equity did not have primary coverage, Farmers did not afford coverage; or,

3. Farmers acted in good faith in interpreting the omnibus clauses of the respective policies to require the permission of Arlie Holm for Patricia Frickey to operate the automobile.

The respective omnibus clauses of the insurance companies are as follows:

Equity's policy under Part I—LIABILITY reads:

"**Persons Insured:** The following are insured   . . .
"(a)   with respect to the owned automobile,
    (1)   the named insured or any resident of the same household,
    (2)   any other person using such automobile with the permission of the named insured provided his actual operation   . . .   is within the scope of such permission   . . ."

Farmer's policy, Part I—Liability Insurance, reads as follows:

"DEFINITION OF INSURED
"The unqualified word 'insured' includes

. . .

"(b)   with respect to a non-owned automobile,
    (1)   the named insured or a relative, and
    (2)   any other person or organization not owning or hiring such automobile if legally responsible for its use by the named insured or a relative, but only in the event such named insured or relative is legally liable for the occurrence; provided the actual use of the non-owned automobile by the persons in (1) and (2) above is with the permission of the owner."

We turn first to plaintiff's argument that there are genuine issues as to material facts. In this regard the court notes there is no disagreement as to the following facts: that Arlie Holm was the title holder of the car in question, that he is the named insured in the Equity policy, that his son Bradley paid for the car and maintained it, that Bradley had the unrestricted use of the car, and that he permitted plaintiff (a 14-year-old girl with no driver's license) to operate the car. Nor is there any dispute as to the fact

plaintiff was driving the car with Bradley's assistance in shifting the gears. These are the undisputed *material* facts. It is also uncontroverted that Equity and Farmers at all times denied coverage. The denial was based on Equity's original investigation (soon after the accident) which disclosed to both insurance companies that the situation set out above existed. Nor are the dates when Equity made payment disputed.

Appellant, in her argument, alleges that the following facts are in dispute: (1) ownership, (2) bad faith investigation by Equity and none by Farmers, (3) whether others were permitted to drive the car prior to this case, (4) that plaintiff was not driving the car alone, and (5) that there was a delay on the part of Equity in paying the Hasletts and Hobsons. It should be noted that the facts upon which ownership could be determined are undisputed, that the manner of investigation which Equity performed is not disputed, nor is the fact that Farmers relied upon Equity's investigation disputed. The fact that one other person was permitted to drive the car prior to the incident giving rise to this case is not disputed, and that plaintiff was not driving the car alone is not disputed. It should be noted that regarding each of appellant's alleged disputed facts, appellant is arguing conclusions of law. Appellant is in effect attempting, in the foregoing four situations, to convince this court that the facts shown give rise to a disputed legal issue. This does not, however, constitute a dispute as to the facts involved. As to the fifth contention of disputed fact argued by appellant, which alleged a six-month delay in Equity's paying of the claims: there is no dispute as to the dates upon which Equity made payment. Appellant is again attempting to get this court to hold that such delay is a disputed fact. It is not. In reality what appellant would have us decide is a conclusion of law based upon such facts. Moreover, Equity alleges, and this court believes, that the payments of the Haslett and Hobson claims were made because of Bradley Holm's negligence in permitting appellant to operate the car.

From the foregoing two paragraphs, it is clear that all of the *material* facts in this case were before the trial court, and there is no ground for reversing the trial court as to the summary judgments on a claim of disputed facts. The trial court had the material facts before it and did not err in reaching its conclusions of law based on such facts; therefore, the first three errors claimed by appellant are without merit.

.

As to appellant's claim of error relative to damages in the way of attorney fees, it seems clear to this court that the defendants acted in good faith in denying coverage to appellant for her defense of the original action. For them to incur liability for attorney fees, appellant must prove the insurance companies acted in bad faith. This appellant failed to do, and therefore the trial court was correct in denying attorney fees. See *Sturdy v. Allied Mutual Ins. Co.,* 203 Kan. 783, 794, 457 P.2d 34, where the court states:

". . . A good faith legal controversy as to policy interpretation existed, being one of first impression in this jurisdiction . . . We think the defendant has not been unreasonable in its position, though mistaken, and we cannot say it refused without just cause or excuse to pay the full amount of the loss as now determined. Hence we hold attorney fees are not allowable here."

See also *Koch, Administratrix v. Prudential Ins. Co.,* 205 Kan. 561, 470 P.2d 756, and *Forrester v. State Farm Mutual Automobile Ins. Co.,* 213 Kan. 442, 452, 517 P.2d 173. Moreover, attorney fees may not be taxed as costs unless authorized by a statute [K.S.A. 60-2003(6)].

Likewise, appellant is not entitled to attorney fees under K.S.A. 40-256. First, that statute applies only when the insurer refuses to pay a judgment rendered against the plaintiff. Second, as a predicate for liability of the insurance carrier for attorney fees, the statute requires that such carrier ". . . has refused without just cause or excuse to pay the full amount of such loss." It is the opinion of this court that the insurance carriers in this case acted in good faith and that they did not decline coverage "without just cause."

Appellant cites as authority *Jones v. Smith,* 1 Kan. App. 2d 331, 564 P.2d 574, where this court held the insurer liable for the actions of a second permittee. This case is distinguishable. In the *Jones* case the father (the insured) permitted his daughter to retain possession despite the fact he knew of her past violations of his instructions. Additionally, the trial court found that the driver had the implied consent and permission of the insured, and this court on appeal held:

". . . On appellate review, this court accepts as true the evidence and all inferences to be drawn therefrom which supports or tends to support the findings of the trial court . . ." (p. 336).

As to appellant's claim for punitive damages, it is clear that such damages are not recoverable for breach of contract in the absence of an independent tort connected therewith.

"As a general rule, damages for breach of contract are limited to pecuniary loss sustained and the breach of contract alone does not form a basis for recovery of punitive damages." (*Hess v. Jarboe,* 201 Kan. 705, 443 P.2d 294 [Syl. 1].)

Also, "[a] party may recover punitive damages [for breach of contract] when some independent tort results in additional injury and such tortious act indicates malice, fraud or wanton disregard for the rights of others." (*Hess v. Jarboe,* supra, [Syl. 2].) See also *Hass v. Preferred Risk Mutual Ins. Co.,* 214 Kan. 747, 522 P.2d 438.

We turn now to plaintiff's claim for damages due to mental suffering. To recover for mental suffering, plaintiff would have to prove that the actions of the defendant insurance companies in this case were wanton or reckless. See Restatement, Contracts § 341, where it is stated:

"In actions for breach of contract, damages will not be given as compensation for mental suffering, except where the breach was wanton or reckless and caused bodily harm  .  .  ." (p. 559)

See also *Henry Morrison Flagler Museum v. Lee,* 268 So. 2d 434 (Fla. App. 1972), and Am. Jur. 2d, Damages § 196, p. 276.

It should be noted that in Kansas the question of insurance coverage of a second permittee who is 14 years of age, unlicensed, and an incompetent driver has not been settled. Bad faith should not be attributed to insurance carriers who do not pay under such situations.

It is clear to this court that damages for mental suffering, for punitive damages, and for attorney fees are not recoverable by the appellant for the reasons set out above.

The judgment of the trial court in this case in granting summary judgment in favor of both insurance companies was correct, and same is affirmed.

REES, J., dissenting: My view of this case differs from that of the majority.

On June 16, 1975, a 1963 Ford was involved in an accident in McPherson that resulted in damage to two other automobiles, one of which was owned by Rebecca Hobson and Tom Hobson, Jr. The driver of the Ford was Patricia Frickey, the plaintiff in the

case before us. She was fourteen years of age and had no driver's license. Bradley Holm was an occupant of the Ford. He was involved in assisting plaintiff in her driving.

The certificate of title to the Ford was issued in the name of Arlie Holm, Bradley's father. In response to interrogatories, Bradley and Arlie stated that the car was purchased by Arlie in 1974 for the primary use of Bradley; Bradley was nineteen years of age at the time of the accident; "the car was Bradley's to use at all times"; Bradley was responsible for the day-to-day maintenance and upkeep of the automobile; they "can't remember any" restrictions Arlie had placed upon Bradley prior to the accident date in regard to driving of the automobile by anyone other than Bradley; and they denied that Bradley was expressly prohibited by Arlie to permit anyone other than their immediate family to drive the automobile. It is assumed Bradley paid for the purchase of the Ford. Plaintiff stated this as fact in her trial brief and defendants have not refuted that statement.

The majority opinion sets forth relevant language of the automobile liability insurance policies issued by Equity and Farmers.

By a letter sent to plaintiff on July 25, 1975, Equity made a complete denial of coverage for plaintiff. The asserted ground for denial was that plaintiff was not a permissive user of the Holm automobile.

Farmers wrote plaintiff's counsel on October 30, 1975. Farmers took the position that Arlie was the "owner" as that term is used in its non-owned automobile clause; plaintiff was not driving with the permission of Arlie; if Equity has no coverage, neither does Farmers; and if there is coverage, Equity's is primary and Farmers' is excess. The record reflects that in fact Farmers refused to assume any obligation under its policy for the benefit of plaintiff. Although not explicitly, by its letter and conduct Farmers effectively made a complete denial of coverage.

On November 24, 1975, the Hobsons filed suit in county court against plaintiff, as a co-defendant, for property damage arising out of plaintiff's use of the Holm automobile. The defendants in the Hobson suit were plaintiff, Bradley, and his parents, Mr. and Mrs. Arlie Holm. It was alleged that the plaintiff was negligent in her operation of the Holm automobile; Bradley negligently entrusted the automobile to plaintiff, failed to control or direct

plaintiff in her operation of the automobile, and allowed plaintiff to operate the automobile negligently; and Arlie was vicariously liable for the negligent entrustment of the automobile to plaintiff by Bradley, Arlie's alleged agent. No allegations of negligence on the part of Mrs. Holm were made.

The case before us was commenced on December 3, 1975. Plaintiff's petition alleged:

". . . [P]laintiff Patricia Frickey has suffered damages [1] by reason of incurring expenses for the investigation of said accident and insurance coverage, [2] by reason of incurring attorneys' fees to protect her interest and to defend all claims against her, [3] by reason of any judgment granted against her for damages and/or attorneys' fees as claimed in the McPherson County Court action . . . and [4] for mental anguish and worry by reason of the actions and activities of the defendant insurance carriers. Further, the plaintiff Patricia Frickey alleges that the actions and activities of the defendant insurance carriers, in denying claims for coverage and their failure to adequately investigate the facts, were willful, malicious and intentional and that such conduct should be discouraged by awarding her [5] exemplary damages."

Therefore, the elements of damage sought in this case are:

1. Attorney fee expense for defense of the Hobson lawsuit;
2. Attorney fee expense for prosecution of this lawsuit against the insurers;
3. Damages for mental anguish;
4. Punitive damages.

Under the Equity policy the Holm automobile was the owned automobile; Arlie was the named insured; and plaintiff was not a resident of the named insured's household. Under the Farmers policy, the Holm automobile was a non-owned automobile; James H. Frickey, plaintiff's father, was the named insured; and plaintiff was a relative of the named insured. Under Equity's policy, plaintiff was an insured if she was a permissive user, that is, a second permittee of Arlie, the named insured. Under Farmers' policy, plaintiff was an insured if her use was with the express or implied permission of the "owner" of the Holm automobile.

Plaintiff was driving with the express permission of Bradley.

Whether plaintiff was a permissive user under Farmers' policy requires resolution of a preliminary issue. Who was "owner" of the Holm automobile as that word is used in Farmers' policy? Arlie, because title was in his name? Or Bradley? Or both? If Bradley was the, or an, "owner," plaintiff was a permissive user.

If Arlie was the "owner," then the question is whether plaintiff had Arlie's implied permission to drive the automobile, that is, was she a second permittee.

If plaintiff was an insured, the insurers under the terms of their policies each owed her (1) the duty to defend the Hobson suit; and (2) the duty to pay such damages as she might be found to be legally obligated to pay. If plaintiff was an insured, the duty to defend was owed by the two insurers severally; their "other insurance" clauses did not affect this duty; and any primary-excess question as to payment of a possible judgment awarded the Hobsons would involve the insurers and not plaintiff. See *Maryland Cas. Co. v. American Family Insurance Group,* 199 Kan. 373, Syl. 9, 386, 429 P.2d 931 (1967); *United States Fidelity & Guar. Co. v. Tri-State Ins. Co.,* 285 F.2d 579, 582 (10th Cir. 1960).

Because of the insurers' denials of coverage, plaintiff retained counsel who defended the Hobson suit. Plaintiff has not been determined to be legally obligated to pay damages to the Hobsons, but she incurred attorney fees for services rendered in the defense of their suit. These attorney fees are plaintiff's cost of defense.

Apparently Equity paid the Hobsons the full amount of their property damage on May 7, 1976. Counsel for Equity has stated on the record that Equity paid "on the basis that Bradley Holm was negligent in lending the car to a minor driver." The trial court, on May 18, 1976, entered an order of dismissal of the Hobson claim with prejudice as to the three Holms. The order was submitted by agreement of counsel for the Hobsons and counsel for Equity acting as counsel for the Holms. Neither counsel for plaintiff nor counsel for Farmers participated in any way in this dismissal activity.

There has been no final judicial determination of nonliability of plaintiff to the Hobsons. As a part of the journal entry of judgment sustaining defendants' summary judgment motions, filed December 3, 1976, it is recited that the Hobson suit was dismissed as to plaintiff without prejudice, a disposition otherwise than on the merits. The benefit to plaintiff of the May 18, 1976, dismissal is that there then arose the additional defense to the Hobson suit that the Hobsons had been made whole for their loss.

The cause of action before us is plaintiff's claim against the

insurers on their policies, an action for breach of contract. I agree with the majority that plaintiff, as a matter of law, may not recover for mental anguish or punitive damages. *Hass v. Preferred Risk Mutual Ins. Co.,* 214 Kan. 747, 750, 522 P.2d 438 (1974); *Moffet v. Kansas City Fire & Marine Ins. Co.,* 173 Kan. 52, 57-58, 244 P.2d 228 (1952). To this extent, the trial court did not err. However, the majority is mistaken with regard to plaintiff's claim for damages for the cost of defense of the Hobson suit.

The allowance or denial of attorney fees under K.S.A. 40-256 is a matter relating only to attorney fees for services in a suit on a policy, in this case, to plaintiff's claim on the insurers' policies. The statute's wording makes it applicable to "actions . . . in which judgment is rendered against any insurance company . . . on any policy . . . of insurance . . ." The statute has application only to her claim for attorney fees for representation and prosecution of this breach of contract suit against the insurers. Her breach of contract claim for damages by reason of expense incurred for defense of the Hobson suit, consequential damages for breach of contractual duty to defend, does not come under K.S.A. 40-256. The duty to defend is dependent upon the issue of coverage. The contractual right to a defense is a benefit of coverage. *Spruill Motors, Inc. v. Universal Underwriters Ins. Co.,* 212 Kan. 681, 688-689, 512 P.2d 403 (1973). Whether plaintiff was an insured of either or both defendants is a question not decided by the trial court and not before us. That question is determinative of plaintiff's right to recover her cost of defense.

Equity states in its brief that "plaintiff is seeking attorney's fees, based upon Equity Mutual's failure to tender a defense for her. This is certainly a novel request." It is not. See, for example, *Spruill Motors, Inc. v. Universal Underwriters Ins. Co.,* supra, p. 688.

That the question of coverage, whether plaintiff was an insured, is not before us is explicitly acknowledged in Equity's brief which includes the representative statement that "the question is not whether Patricia Frickey was an additional insured, the question is whether Equity Mutual acted in good faith in denying coverage."

The trial court erroneously denied plaintiff's claim on the consequential damages (attorney fees for defense of the Hobson

suit) element of her claim against the insurers by its entry of summary judgment on the ground the insurers had not denied coverage without just cause or excuse and that by reason of the just cause or excuse language of K.S.A. 40-256 she is entitled to no attorney fees for whatever reason incurred. The trial court was erroneously led to this determination by defense counsel. Counsel did so at the risk of treatment such as that afforded the insurer in *Thompson Transport Co. v. Middlestates Construction Co.,* 194 Kan. 52, 59-60, 397 P.2d 368 (1964), and *Thompson Transport Co. v. Middlestates Construction Co.,* 195 Kan. 172, 403 P.2d 999 (1965).

The trial court determination that the insurers' refusal of coverage was not without just cause or excuse was premature and not decisive. The majority's affirmance of this determination is likewise premature and not decisive. If there is no coverage, the just cause or excuse question does not arise. Again, whether a fourteen-year-old unlicensed driver cannot be a second permittee was not decided by the trial court, has not been briefed or argued on appeal, and is not before us. The majority of this court does not purport to decide the question. I do not now venture an opinion. Whether Bradley Holm was the, or an, "owner" under the Farmers' policy was not argued to or decided by the trial court, has been neither briefed nor argued on appeal, and neither the majority nor I undertake to make that determination.

The trial court's summary judgment should be reversed as to denial of plaintiff's claim for cost of defense of the Hobson suit; the case should be remanded for trial on the issue of coverage, that is, whether plaintiff was an insured of either or both defendants, and the ascertainment of consequential damage for breach of contract (reasonable cost of plaintiff's defense of the Hobson suit) if coverage is found; and the summary judgment should be affirmed as to denial of plaintiff's claims for mental anguish and punitive damages. The denial of allowance of attorney fees to plaintiff under K.S.A. 40-256 for prosecution of her claim against the insurers on the policies is premature and should not now be either affirmed or denied.

Presentation to the trial court of the question of Equity's coverage without an evidentiary hearing should be possible. It is undisputed that plaintiff was a fourteen-year-old unlicensed driver operating the Holm automobile with the express permis-

sion of Bradley, a first permittee, at the time of the accident. Equity's expressed position simply is that no fourteen-year-old unlicensed driver can be found to have implied permission to drive. Resolution of that contention should not be allowed to involve unjustifiable time and expense to the parties and more unnecessary judicial time and attention.

In this litigation, Farmers has ridden along on Equity's coat-tails with regard to Equity's erroneous argument that plaintiff is not entitled to recover her cost of defense if coverage denial was not without just cause or excuse. Tactically this is not subject to criticism. The trial court and a majority of this court have been swayed. However, a review of the record and arguments reveals that Farmers' counsel has not stood foursquare in Equity's corner. On oral argument, Farmers faced up to *Spruill* and argued alternatively that if the just cause or excuse argument did not hold up, still Equity was the primary insurer and Farmers was not obligated because its coverage was excess. Equity declined to deal with *Spruill* in either its brief or at oral argument. Additionally, Farmers suggested to the trial court that the approach to analysis of the facts and coverage issues should be comparable to that demonstrated in *United States Fidelity & G. Co. v. Safeco Ins. Co. of Am.,* 522 S.W.2d 809 (Mo. 1975), and that said case also is authority for finding plaintiff had Arlie's implied permission.

Although there are distinctions, it would behoove the parties and the trial court to consider the approaches and principles found in *United States Fidelity & G. Co. v. Safeco Ins. Co. of Am.,* supra, the other cases cited above, *Jones v. Smith,* 1 Kan. App. 2d 331, 564 P.2d 574, rev. denied, 221 Kan. 757, (1977), *United States Fidelity & Guaranty Co. v. Continental Ins. Co.,* 1 Kan. App. 2d 722, 573 P.2d 1106 (1977), and the cases cited therein.

Because it is neither relevant nor appropriate at this time, I express no opinion as to whether the denials of coverage were without just cause or excuse. The majority should not have done so for the same reason. The mere non-existence of precise Kansas authority is not sufficient. What two cases in this or any other area of the law are precisely alike? Many questions are determinable as a matter of law without precise case precedent. See *Thompson Transport Co. v. Middlestates Construction Co.,* 194 Kan. 52, 397

P.2d 368 (1964). Conclusions in particular cases in particular foreign jurisdictions that give rise to a claim of "split of authority" do not close the door to the possibility of Kansas judicial determination that there was no just cause or excuse in this case.

In summary, the trial court findings that:

"3.   There is a good faith controversy of first impression in Kansas as to whether the scope of implied permission as applied to omnibus clauses under automobile liability insurance policies should be extended to a minor, incompetent [sic] and unlicensed driver operating a vehicle without the express permission of the named insured or title owner.

"4.   Where, as here, there is a good faith legal controversy as to the question of policy interpretation and coverage which is of first impression in this jurisdiction and where authorities from other jurisdictions appear divided, attorney fees are not allowable to the third-party plaintiff pursuant to K.S.A. 40-256."

do not support its summary judgment against plaintiff on her breach of contract claim for recovery of her cost of defense.

The majority chooses to publish. Rather than extend this too long dissent, I believe it better to simply say that my view of this case and applicable law is as I have set forth above.